WILLIAM SPERB, JR., Appellant, *v.* THE METROPOLITAN
ELEVATED RAILWAY COMPANY et al., Respondents.

In determining the amount of damages to be paid by an elevated railroad
company, to an owner of land abutting on a street through which the
company's road runs, in order to acquire the right to continue to operate
its franchise in the street, the railroad structure is not alone to be con-
sidered, but the company is bound to make compensation for the inci-
dental injuries caused by the running of trains upon that structure.
The structure and its use may not be separated in considering the effect
upon the complaining property owner.

*Fobes* v. *R., W. & O. R. R. Co.* (121 N. Y. 505), distinguished.

The principle which should guide an award of damages to be paid by the
company, in an action by an abutting owner to restrain the operation of
the road, in order to obviate the injunction, is the same as in proceedings
to condemn the owner's rights in the street for the railroad use, *i. e.,* les-
sened value of the landowner's interest in his premises, caused by the
continued maintenance and operation of the railroad.

*Sperb* v. *M. E. R. Co.* (61 Hun, 539), reversed.

(Argued January 24, 1893 ; decided January 31, 1893.)

APPEAL from judgment of the General Term of the Supreme
Court in the first judicial department, entered upon an order
made May 12, 1891, which reversed a judgment in favor of
plaintiff, entered upon the report of a referee and ordered a
new trial.

This action was brought to enjoin the further maintenance
and operation of the defendants' elevated railroad in front of
the plaintiff's premises, No. 143 West Fifty-third street, in
the city of New York, and to recover such damages as
plaintiff had sustained in consequence of such maintenance and
operation.

The judgment entered upon the report of a referee in favor
of the plaintiff, awarded him damages sustained up to the
commencement of the action and enjoined the defendants
from maintaining, or in any way using, the railway structure
in front of the premises owned by plaintiff and which abutted
on the northerly side of West Fifty-third street in the city of
New York; unless within a certain time the defendants
should pay to the plaintiff a sum of $6,000, and take a con-

veyance of the easements; in which case the injunction should be inoperative.

Further facts are stated in the opinion.

*Edwin M. Felt* for appellant. The contention that the value of plaintiff's easements taken is only so much of the depreciation in fee value as is due to the permanent structure, is untenable. (*Altmeyer* v. *N. Y. E. R. R. Co.*, 129 N. Y. 96; *A. B. N. Co.* v. *N. Y. E. R. R. Co.*, Id. 252; *Abendroth* v. *M. R. Co.*, 122 id. 1; *Bohm* v. *M. E. R. Co.*, 129 id. 106.) The finding that no damages have been caused to the fee value of the premises in question from October 22, 1884, to the present time, by the existence and operation of said railroad, but all of such damages were incurred prior to the plaintiff's purchase, is not inconsistent with the other findings. (*F. Bank* v. *Parker*, 130 N. Y. 416; *Green* v. *Roworth*, 113 id. 462; *Bennett* v. *Bates*, 94 id. 354.) The reservation in the deed to the plaintiff did not deprive him of the right to the equitable relief asked for, nor affect his right to recover such damages as he had sustained after he became the owner of the property. (*Kernochan Case*, 130 N. Y. 651; *Papenheim Case*, 128 id. 436.)

*Samuel Blythe Rogers* for respondents. The General Term properly reversed the judgment for the error of the learned referee in requiring defendants, as the sole condition upon which they might legalize their structure, to pay for the incidental annoyances from the running of trains in the future. (*Kiep* v. *M. E. R. Co.*, 61 Hun, 539; *Jordan* v. *M. E. R. Co.*, 44 N. Y. S. R. 898; *Smith* v. *N. Y. E. R. Co.*, Id. 875; *Fobes* v. *R., W. & O. R. R. Co.*, 121 N. Y. 505; *Lahr* v. *M. E. R. Co.*, 104 id. 295; *Kane* v. *M. E. R. Co.*, 34 N. Y. S. R. 874; *In re N. Y. E. R. Co.*, 36 Hun, 427; *Greene* v. *N. Y. C. R. R. Co.*, 12 Abb. Pr. 124, 145, 148; *Taylor* v. *M. E. R. Co.*, 18 J. & S. 311, 328; *F. N. Bank* v. *N. Y. E. R. Co.*, 24 Fed. Rep. 114, 118.) Plaintiff does not own the fee of the bed of any part of Fifty-third street. (*Jackson* v.

*Hathaway*, 15 Johns. 447; *English* v. *Brennan*, 60 N. Y. 609; *White's Bank* v. *Nichols*, 64 id. 65; *K. Co. F. Ins. Co.* v. *Stevens*, 87 id. 287; *Lee* v. *Lee*, 27 Hun, 6.)

GRAY, J. The only point, which is presented to us upon this appeal, is as to the correctness of the refusal by the referee to make the following findings when requested by the defendants:

"*Fifteenth*: The sum fixed which the defendants may pay in order to obviate the injunction herein should not be greater than a sum necessary to compensate the plaintiff for the perpetual maintenance of the defendants' elevated railway structure *and exclusive of the damages caused by the running of trains thereon*.

"Refused.—W. H. W., *Ref*.

"*Sixteenth*: The value of so much of the plaintiff's easements as are taken by the perpetual maintenance of the defendants' elevated railroad structure, *and exclusive of all injuries in the future caused by the running of trains thereon, is the sum of          dollars*.

"Refused.—W. H. W., *Ref*."

The referee's rulings were excepted to and these exceptions, alone, are relied upon by the respondents to sustain the reversal by the General Term. The General Term justices, in their opinion, took the quite unwarrantable view that the defendants, in acquiring the right to maintain their structure in the street, are not bound to make compensation for the incidental injuries produced by the running of trains upon the same, and that the future discharge of smoke, cinders and noxious gases are not items of damage which should be considered in the estimate of the compensation to be made.

The defendants' counsel concisely states the proposition of the General Term justices to be, that the plaintiff had no easement which can be taken by the running of trains, and he earnestly and ingeniously seeks to sustain its correctness. The argument is that though such items may properly enter into the estimate of damages suffered in the past, the trespass itself

consists only in the maintenance of a permanent structure in the street, and the lawful operation of the company's franchises, in the running of trains upon the structure, whatever may be the incidents attendant, if necessarily so, cannot afford grounds for an award of compensation, when the company seeks to acquire, or to condemn, the rights of the abutting property owner. The argument is rested, almost wholly, upon our decision in *Fobes* v. *Rome, etc., R. R. Co.* (121 N. Y. 505). That decision is very much misapprehended, when it is sought to make use of it as an authority for such a doctrine. In that case the question presented grew out of the operation of a steam surface railroad upon the bed of the street, and related to the right of an abutting owner, whose property was bounded by the exterior line of the street, to hold the railroad company liable for consequential injuries. We held, reversing a judgment recovered by the plaintiff, that no such liability existed, and that there was no legal distinction between the case of a surface railroad operated by horses and one operated by steam power. When the use of either becomes unreasonable, excessive, or exclusive, then it might be proper to demand the interference of a court of equity; but there is nothing in the mere change in the motive power, though constituting a different street use, which created any right in the adjoining landowner to recover damages. In reference to the *Story* case (90 N. Y. 122), which had been cited, we held that it was not intended to overrule or change the law in regard to steam surface railroads, and the discussion of that case was conducted with respect to the effect claimed for it upon that law. Judge Peckham, who delivered the opinion in the *Fobes* case, in speaking of the character of the street obstruction caused by the elevated railroad, was considering the structure itself and how it amounted to a permanent, exclusive and absolute appropriation of a portion of the street. He was not considering the question of incidental injuries caused by the interference with easements from the operation of the road by the running of trains; and his opinion, when read in connection with the subject under

discussion, is not susceptible of the construction placed upon it by the court below. In the *Story* case the finding of the trial court was that the defendant proposed to construct an elevated railroad in the street and in front of the plaintiff's premises, and the question for decision was whether the proposed structure was an appropriation of the street which invaded the complainant's easements; and it was held that it was and, thereby, took plaintiff's property. In Judge PECK-HAM's consideration of the *Story* case, he had in mind the basis of fact for its decision and that was the nature, and the lawfulness as to the adjoining owner, of the structure which the railroad company designed to maintain in the street. In the *Fobes'* case we decided that there was no taking of the plaintiff's property by the railroad company, in operating its road under legislative authority in a public street, in the soil of which he possessed no interest; while in the *Story* case the question was altogether different in the property owner's right to restrain the maintenance of a structure in the street, which, in its peculiar features of a permanent obstruction to access and of a permanent exclusion of air and light, amounted to a deprivation or to an actual taking of the adjoining landowners' property, in the lessened value of these appurtenant easements.

In holding as he did that the passage of the numerous trains, at short intervals, over the railway structure constituted an inconsistent and excessive street use and that, to that extent, the defendants have taken, and will hereafter keep, a part of the plaintiff's easements of light and air, the referee was clearly right and he was perfectly justified, in fixing the amount of damages to be paid by the defendant in order to obviate the injunction, in refusing to exclude the damages caused by the running of trains.

The doctrine of the elevated railway cases has been of steady and consistent growth, since its rise in the decision of the *Story* case; which converted many of what, under previous circumstances of street railway uses, were mere consequential injuries into invasions of the property rights of adjoining property owners. The theory of awarding damages

in actions against the elevated railway companies has been
that they are trespassers as to abutting lot owners and are
responsible to them for such injuries as may be proved to
result from their wrongful acts. In their occupation and
use of the street, they take from the abutting lot owners a portion
of their easements in the street, without making compensation
and, hence, they are, as to them, illegally there. (See *Kane* v. *N.*
*Y. El. R. R. Co.*, 125 N. Y. 164; *Amer. Bank Note Co.*,
v. *Same*, 129 id. 252.) The illegality is not in their making
use of the street for their corporate purposes, for that right
has been competently granted to them; but the illegality of
their acts consists in their appropriating a portion of the
adjoining owner's property rights of easements, without first
acquiring them by negotiation, or by condemnation proceed-
ings. In all of the cases, the trespass has been regarded as
consisting in the presence of the elevated railway structure
and in the passage of cars upon it; and in none is there a
suggestion that the structure and its use can be separated, in
considering the effect upon the complaining property owner.
In *Drucker* v. *El. R. R. Co.* (106 N. Y. 157), it was held
that the structure and the passage of trains lessened the ease-
ment of light; the smoke, cinders, gases, etc., affect and
impair the easement of air and the drippings and frequent
columns interfere with the convenience of access, and, as
abridging these easements of the landowner, they were ele-
ments of damage. In the *American Bank Note Co.'s* case
(129 N. Y. 252), Judge FINCH, who wrote in the *Drucker*
case, referred to what it had decided as to liability for dam-
ages, and defined the limitation upon the right to recover to
be found when the acts did not, "*pro tanto* constitute some
element of the taking." In *Kernochan* v. *N. Y. El. R. R.*
*Co.* (128 N. Y. 559), it was said by Judge ANDREWS that,
under circumstances showing an intention to permanently
operate the road, in the character and purpose of the struc-
ture, the powers, obligations and expenditures of the com-
pany, and the right of condemnation given by the statutes,
" the construction and operation of the road, before any con-

summated right has been acquired by the defendants, whereby the owner of abutting property is deprived of the full enjoyment of his property, constitutes an injury to the inheritance." There is no authority to be found in our decisions to support the proposition contended for, that the elevated railroad structure is alone to be considered, in fixing the amount to be paid by the company in order to acquire the right to continue to operate its franchises in the street. In all of them, the operation of the road is deemed an element of damage, as impairing and lessening the landowner's easement and it is to be considered as incidental to the maintenance and use of the structure. In a decision by a General Term of the same department, differently constituted, however, this same question was rightly decided and according to the views we entertain. We are informed that this decision, which was in the case of Suarez against the Manhattan Railway Co., was made shortly before the decision in this case; but was not known to the justices below and in that way the conflict in opinions is accounted for. In the *Suarez* case it was held, on the authority of the *Lahr* case (104 N. Y. 269), that the defendant was liable for the operation of its trains and that, in giving the defendant an opportunity to pay for the easements taken, the court does not require the defendant to pay for the right to run trains, but that it required them to pay for the easements taken of light, air and access, at a price measured by their lessened value, resulting from the unlawful maintenance of the structure and operation of the road thereon. The brief opinion, which was delivered by Justice BARRETT is reported in Vol. 15 of N. Y. Supplement (at page 222), and was concurred in by Justices VAN BRUNT and PATTERSON.

The principle, which should guide an award of damages to be paid by the railroad company in order to obviate the injunction, is the same as in proceedings under the statute to condemn property for the railroad use. The injunction of the court and the alternative damages are deemed to be a

substitute for those proceedings. In computing the alternative damages, their extent and the elements should be the same as would be considered in the computation of the compensation to be given in proceedings for the condemnation of lands for a railroad use; due regard being had to the different characteristics of the property to be taken. (*American Bank Note Co.* v. *N. Y. El. R. R. Co.*, 129 N. Y. 253.) If the defendants had instituted such a proceeding *in invitum* the lot owner, there can be no doubt but that they would be obliged to pay for the easements of light, air and access, taken and appropriated by them, a compensation based upon the lessened value of the lot owner's interest in the premises through the continued maintenance and operation of the elevated railway. To the extent that his street easements are appropriated and impaired, his adjoining property may be shown to be damaged.

It is needless to further discuss the question. I think the decision below was the result of a total misapprehension of the decision in the *Fobes* case and is opposed to the principle of all of our decisions in this class of litigation.

The order of the General Term should be reversed and the judgment entered upon the report of the referee should be affirmed, with costs in both courts to the appellant.

All concur.

Order reversed and judgment affirmed.