PASCAL P. PRATT, Appellant, *v.* THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY and Others, Respondents.

*Injunction to restrain the police power of the State in abolishing grade crossings, at the suit of an abutting owner — discretion of the trial court — measure of damages.*

The granting or refusing of an injunction *pendente lite* rests in the sound discretion of the court of original jurisdiction, and its order will not usually be reversed unless there has been an abuse of that discretion.

Where the primary purpose of an improvement in the manner of constructing railroad crossings in city streets is not for the benefit of a railroad company or its patrons, but is an exercise of the police power of the State for the protection of the lives and limbs of its inhabitants, the court will not enjoin the carrying out of the project, but will leave an abutting owner, who claims that he will be damaged thereby, to his remedy by action, in which he may be awarded damages to the same extent and for the same elements as the compensation given in a special proceeding for the condemnation of land under the right of eminent domain.

Where a railroad is conducted through a street by means of an open excavation the measure of damages is the difference between the actual market value of the land of the abutting owner and what the land would have been worth if the railroad had not taken the easement, and when there is neither a decrease in value nor any prevention of an increase, the plaintiff is entitled only to nominal damages.

Upon an application for a temporary injunction to restrain the defendant, a steam railroad company, from excavating a cut in a city street, it appeared that the city owned the fee of the street, but had taken no proceedings to condemn the

interest of the plaintiff, as an abutting owner, or to determine what injury would result to him from the proposed excavation; that the excavation was a part of a general plan to change grade crossings in the city of Buffalo, involving an expenditure of $4,000,000 or $5,000,000, part of which was to be paid by the city and part by the railroads running into the city; that the proposed cut in the street would still leave an open space in front of the plaintiff's premises at least forty-four feet wide, and that the main opposition to the excavation consisted in the fact that the approach to plaintiff's premises by certain streets would be circuitous instead of direct.

*Held,* that the removal of the danger caused by the railroad tracks at grade, and the substitution of an entirely safe though circuitous route or approach, should be considered, and that the plaintiff was not entitled to an injunction restraining the carrying out of the improvement.

APPEAL by the plaintiff, Pascal P. Pratt, from an order of the Supreme Court, made at the Erie Special Term and entered in the office of the clerk of the county of Erie on the 2d day of May, 1895, vacating a preliminary injunction heretofore granted in the action.

*John H. Milburn,* for the appellant.

*Frank C. Laughlin,* for the respondents.

LEWIS, J. :

A plan was inaugurated several years ago for the purpose of remedying what had come to be a serious evil in the city of Buffalo, caused by the steam railroads crossing the streets of the city at grade.

After the expenditure of much time and labor, a general plan for a change of the grade crossings was adopted.

It involved a very large expenditure of money, amounting to $4,000,000 or $5,000,000, part of which is to be paid by the railroads and the balance by the city. The New York Central and Hudson River Railroad Company has for many years had and maintained two tracks running along the surface of a street in Buffalo, known as the Terrace. A very large number of its passenger trains pass over these tracks daily.

Plaintiff owns a valuable parcel of land abutting upon the southerly side of the Terrace, upon which are valuable business buildings. His lot is several hundred feet westerly from Main street, which crosses the Terrace. Pearl street enters the Terrace

nearly opposite the plaintiff's premises. The Terrace has been one of the public streets of the city for many years, and is about 200 feet wide. The adopted plan contemplates depressing the tracks of the Central road through the Terrace, and to accomplish this a cut is to be made along the center of the street, which will be twenty-eight feet wide, and, in front of the plaintiff's premises, twelve feet deep, and a stone wall is to be built upon either side of the cut, extending two feet above the surface of the street. The space between the cut and the plaintiff's premises will vary from forty-four to seventy-five feet in width. Main street is to pass over the cut, and a bridge for pedestrians is to be built over it at the foot of Pearl street. Teams entering the Terrace from Pearl street will be compelled to go several hundred feet out of their way to reach plaintiff's premises by the way of Main street.

The city owns the fee of the street, but no proceedings have been taken to condemn the plaintiff's interest as an abutting owner in the Terrace, or to determine the injury, if any, which would be occasioned to him by the proposed excavation.

Proceedings had progressed so far that contracts had been entered into with the defendants McNaughton and Huntington, and they were about to commence excavating for the cut in the Terrace, and this action was brought by the plaintiff to restrain the defendants from proceeding with the work. A temporary injunction was obtained, and upon a motion being made to continue the injunction pending the trial, an order was made vacating the injunction, and from this order the plaintiff appealed.

It is evident that the plaintiff's property will derive, in common with other property in the city, some advantages from the contemplated change in the grade crossings. Those seeking to reach his premises will be relieved from the danger incident to crossing the railroad tracks now upon the surface of the street.

The real foundation of his complaint is that access to certain other streets will be by a circuitous instead of a direct approach.

The primary purpose of this great improvement is not for the benefit of the railroad company or its patrons, or the traveling public, but is an exercise of the police power of the State for the protection of the lives and limbs of its inhabitants. The moving party in this undertaking is not the railroad company, but the people

of the State. The purpose is not to subserve the railroad use or convenience. In this respect the circumstances of the case are unlike the numerous cases that have arisen and been determined in this State in respect to the liability of railroad companies to damages and injunctions by reason of the construction of railroad embankments or elevated railroads in streets.

From the nature and extent of this improvement, and in respect to its alleged injurious effects upon abutting property, there is a substantial difference in the facts and circumstances of this case and those that existed in the cases of *Reining* v. *N. Y., Lack. & W. Ry. Co.* (128 N. Y. 157), and *Egerer* v. *N. Y. Central & H. R. R. R. Co.* (130 id. 108).

In the former case the portion of the street in front of the plaintiff's premises was practically and substantially closed for ordinary street uses by reason of the railroad embankment. So, in the latter case, "the structures complained of (embankments) practically destroyed the only access to plaintiff's premises with a team and wagon." The proposed cut will be an exclusive appropriation and occupation of twenty-eight feet in width of the surface of the street, and the abutting owners will be excluded from the part of the street so occupied, but there will remain open and unobstructed a sufficient portion of the street for traffic; there will be left substantially sufficient surface of the street for unobstructed ordinary travel, and it may be a question whether this will amount to a taking of plaintiff's easement of access to his premises, or will merely constitute consequential damage which the abutting owner must bear without compensation, as in case of surface roads. In other words, whether the consequential damages flowing from such a lawful corporate user of the street have been transformed by the decisions of the courts from consequential injuries into invasions of property rights within the constitutional prohibition. (*American Bank Note Co.* v. *Elevated R. R. Co.*, 129 N. Y. 271; *Sperb* v. *Elevated R. R. Co.*, 137 id. 155–159.)

But, if it be assumed that the city cannot, for the purpose of altering the grade of the railroad crossings, appropriate a part of the street to the exclusive use of a railroad company so as to prevent abutting owners from the use of any part of the street in the accustomed way, without making compensation for the injury sustained, it does not follow that the plaintiff is entitled to an injunction *pendente lite*, nor

that he will eventually show himself entitled to a final injunction, or even to substantial damages. The improvement may result in the invasion of a technical right and cause a technical wrong, and yet substantial damages may not be awarded, and the plaintiff may not be entitled to injunctive relief.

Unless the plaintiff can establish that the market value of his premises will be decreased by the improvement, or that it will prevent his property from increasing in value, he may not be entitled to anything more than nominal damages. In determining that question, the benefits and advantages resulting from the construction may be weighed and considered.

The removal of the danger caused by the railroad tracks at grade, and the substitution of an entirely safe though circuitous route or approach may be considered.

The doctrine on this subject is well stated in *Bohm* v. *Elevated R. R. Co.* (129 N. Y. 576–587), from the headnote of which we quote as follows: "An abutting owner * * * has certain rights and privileges in a city street termed easements which are appurtenant to his land, and are a species of property."

The beneficial enjoyment of these easements may be interfered with by the erection of an elevated railroad or a railroad embankment, etc., in the street. This interference is a taking *pro tanto*, and entitles the owner to compensation, and in addition to compensation for the damage done his adjoining land.

As, however, these easements are of no value in and of themselves separate from the land, the real and only damage, if any, suffered by the owner in any particular case is a consequential one, *i. e.*, the effect produced upon his abutting land. The question is simply as to the actual result upon the land remaining. Has its actual market value been decreased by the taking, or has it prevented an enhancement in value greater than has actually occurred, and if so, to what extent.

The damage the defendants, the City of Buffalo and the New York Central and Hudson River Railroad Company, may be required to pay is the difference between the actual market value of plaintiff's land and what it would have been worth if the railroad had not taken the other property, *i. e.*, the easements.

When, therefore, it appears that there has been neither a decrease

in value nor any prevention of an increase caused by the railroad, the plaintiff is entitled only to nominal damages. The benefits from the construction of such railroad may be taken into account and weighed, and an injunction will not be issued without proof of substantial damages, notwithstanding that a technical or legal injury may have been caused to the abutting owner's easement in the street. (*Newman* v. *Metropolitan Elevated Ry. Co.*, 118 N. Y. 618; *Becker* v. *Same*, 131 id. 509; *Purdy* v. *Manhattan Ry. Co.*, 36 N. Y. St. Repr. 44.)

In *Gray* v. *Manhatt. Ry. Co.* (128 N. Y. 509) the court, in speaking of a final injunction, observed that unless the court below found the damage to be substantial, it would, in the exercise of its discretion, have withheld the injunction, and left the plaintiff to his remedy at law. It further observed that an equity court is not bound to issue an injunction where it will produce great public or private mischief, merely for the purpose of protecting a technical or unsubstantial right.

The granting or refusing of an injunction *pendente lite* rests in the sound discretion of the court of original jurisdiction, and its order will not ordinarily be reversed unless there has been an abuse of that discretion. (*City of Gloversville* v. *Johnstown, etc., R. R. Co.*, 49 N. Y. St. Repr. 315; *Hessler* v. *Schafer,* 82 Hun, 199; *Grill* v. *Wiswall*, Id. 281.)

Again, the plaintiff may, by claiming it in his complaint, be awarded damages to the same extent and for the same elements as the compensation given in a special proceeding for the condemnation of land under the right of eminent domain.

If the damages awarded are not paid an injunction may be granted restraining the work until the damages are paid. (*Hughes* v. *Elevated R. Co.*, 130 N. Y. 15; *Pappenheim* v. *Met. Elev. R. Co.*, 128 id. 444.)

Upon the payment of damages thus ascertained, the plaintiff may be required to give a deed or convey the right to the defendant, and an injunction will be refused if the defendant be willing to pay the damages upon receipt of a conveyance.

This being the well-settled rule of law, there does not seem to be, upon the facts presented, any propriety in arresting, by injunction, the progress of this great work of remedying the grade-crossing evil.

We have examined the authorities referred to in the appellant's brief, and do not find them in conflict with our views in this case.

The order appealed from should be affirmed, with ten dollars costs and disbursements of the appeal.

BRADLEY and WARD, JJ., concurred.

Order affirmed, with ten dollars costs and disbursements.

90   89
15th  618

