102   363
e105   29
105   32
e105   38
e105   39
f105   40
105   42

# Richmond.

FISHER, TRUSTEE, v. SEABOARD AIR LINE RAILWAY CO.

102   363
110   343

JANUARY 28, 1904.

Absent, Cardwell, J.

1. TORTS—*Destruction of One's Own Building—Unsightly Premises—Negligence.*—A declaration which charges that a defendant pulled down a building on his own lot, and left the partition wall, with communicating doors between that building and the building of the plaintiff, unprotected, exposed, and in a most unsightly condition, but not charging negligence on the part of the defendant, is bad on demurrer, as the act complained of is one which the defendant had the right to do.

2. RAILROADS—*Negligence—How Charged.*—A declaration which simply charges that the plaintiff owned certain property and that the defendant, a railroad company, so "unskilfully, carelessly and negligently ran its trains and locomotives along and upon the trestle of defendant adjacent to plaintiff's premises" that they were injured thereby, but does not point out the acts of negligence or carelessness with such reasonable certainty as to enable the defendant to make defence thereto is bad on demurrer.

3. NUISANCES—*Doing Lawful Act in Lawful Way—Railroads—Noises—Smoke.*—A railroad company acting under authority of law, whose road is constructed and operated with judgment and caution, and without negligence, is not liable to an adjacent landowner for damages resulting from the noises, jarring and shaking of buildings, dust and smoke incident to the running of trains. No action lies for the loss or inconvenience resulting from doing an authorized act in an authorized way.

4. PLEADING—*Joinder of Causes of Action.*—It is not error to join in different courts in the same declaration various and distinct causes of action of the same general nature, accruing at different times,

and resulting in different species of injuries. Whenever causes
of action are of the same nature and the same judgment is to be
given in all they may be joined in one declaration.

Error to a judgment of the Law and Equity Court of the city
of Richmond, in an action of trespass, wherein the plaintiff in
error was the plaintiff, and the defendant in error was the de-
fendant.

*Reversed.*

The opinion states the case.

*A. W. Patteson* and *John H. Ingram,* for the plaintiff in
error.

*Munford, Hunton, Williams & Anderson,* for the defendant
in error.

KEITH, P., delivered the opinion of the court.

This action was instituted by Harris Fisher, trustee for his
wife, Ester Fisher, in the Law and Equity Court of the city of
Richmond, to recover damages against the defendant company.
There were six counts in the declaration, and the defendant
company having demurred to each count, and to the declaration
as a whole, a judgment was entered sustaining the demurrer
and dismissing the case.

It is conceded by counsel for defendant in error that the court
erred in its judgment with respect to the first and second counts.
We shall therefore limit our consideration to the third, fourth,
fifth, and sixth counts.

The third count is as follows:

"And for this also, to-wit, that the said plaintiff being the
owner in fee simple of a certain other store and dwelling house
(fully described in the first count, above), the said defendant

afterwards, to-wit, on the 10th day of July, 1899, acquired the western tenement of said mansion house, and well knowing the premises, and contriving to disturb and injure the said plaintiff in the peaceable and lawful enjoyment of his said land with its appurtenances, did, thereafter, to-wit, on the first day of September, 1899, pull down and carry away the building upon its lot in such manner that the partition wall, with communicating doors, between said two houses, was left unprotected, exposed, and in a most unsightly condition, by means whereof the plaintiff's said tenement has been greatly injured and depreciated in value."

The act complained of in this count is one which the defendant had a right to do. It was the owner of the building which it pulled down, and its liability, if any, results from its doing a lawful act in an unlawful or negligent manner. We are of opinion that the acts constituting negligence are not sufficiently stated in this count, and that the demurrer to it was properly sustained.

The same observation will hold good with respect to the fifth count. The defendant had the right to run its trains, but if it ran them so unskillfully, negligently, or carelessly as to injure the plaintiff, it would be responsible for such damages as might ensue. But the acts of negligence and carelessness should be stated with such reasonable certainty as to enable the defendant to make defence thereto.

The chief controversy in the case is with respect to the fourth and fifth counts, which are as follows:

"And for this also, to-wit, that the said plaintiff being the owner of a certain other store and dwelling house (as described in first count, above) of great value, to-wit, of the value of $10,000, the defendant, well knowing the premises, but contriving, etc., thereafter, to-wit, on the first day of September, 1899, erected and built upon its said lot, in immediate proximity to the aforesaid store and dwelling of said plaintiff, to-wit, with-

in 8 feet thereof, a high trestle, to-wit, of the height of 25 feet, which, approaching from the rear, curves around and runs along the entire length of the plaintiff's premises; and the said plaintiff further says that afterwards, to-wit, on the 27th day of May, 1900, the said defendant began running cars, trucks, trains, and locomotives over and upon the said trestle, and that the running of same has steadily increased and continued from thence to the bringing of this suit; and he avers that the movement of these trains and locomotives on said trestle is an insufferable nuisance, owing to the many horrible noises, the jarring of the ground and shaking of the buildings, and the volumes of smoke and dust so created and emitted, whereby the walls of said building have been cracked and displaced, the air in and about the said plaintiff's premises so polluted as to sensibly impair the enjoyment thereof, and the ordinary comfort of human existence therein otherwise materially interferred with; in consequence of all which the said plaintiff says that said dwelling house has been entirely vacated, and the tenant of his store has given notice of a like intention to move at the expiration of his lease; the said property has thus been greatly injured, and is now of little or no value whatever to the plaintiff.

"And for this also, to-wit, that the said plaintiff being so seised and possessed of another store and dwelling house (fully described in the first count of this declaration), of great value, to-wit, $10,000, the defendant, well knowing the premises, but contriving to injure and disturb the said plaintiff in the peaceable and lawful enjoyment of his said property, heretofore, to-wit, on the 1st day of September, 1899, and on divers other days between that date and the bringing of this suit, so unskillfully, carelessly, and negligently ran its trains and locomotives along and upon the trestle of defendant adjacent to said plaintiff's premises aforesaid that the latter were and are great injured thereby, and in consequence thereof the said property has become and is of little or no value to said plaintiff."

It will be seen that the defendant is not charged with having taken any part of the plaintiff's property.    It appears that the defendant in error, a duly chartered and incorporated railway company, built upon its own property, within eight feet of the dwelling of the plaintiff, a trestle 25 feet in height, which, approaching from the rear, curves around and runs along the entire length of the plaintiff's premises; that upon and over this trestle the cars of the defendant, drawn by locomotives, were from and after the 27th day of May, 1900, to the bringing of this suit, continuously and with increasing frequency operated; and that the movement of these trains and locomotives constituted an insufferable nuisance, owing to the noise which they occasioned, the volumes of smoke and dust created and emitted, polluting the atmosphere, and the jarring of the ground and shaking of the buildings, impairing the enjoyment thereof, and as a consequence the tenant had given notice of his intention to move at the expiration of his lease, and the property has been so injured as to be now of little or no value.    The sixth count presents the same question.

Pollock on Torts, pages 154-156, treating of this subject, says:  ".  .  .  A man cannot be held a wrongdoer, in a court of law, for acting in conformity with direction or allowance of the supreme legal power in a State.    In other words, 'no action will lie for doing that which the Legislature has authorized, if it be done without negligence, although it does occasion damage to any one.'   The meaning of the qualification will appear immediately.    Subject thereto, 'the remedy of the party who suffers the loss is confined to recovering such compensation (if any) as the Legislature has thought fit to give him.'

".  .  .  Apart from the question of statutory compensation, it is settled that no action can be maintained for loss or inconvenience which is the necessary consequence of an authorized thing being done in an authorized manner.    A person dwelling near a railway constructed, under authority of Parliament, for the

purpose of being worked by locomotive engines, cannot complain of the noise and vibration caused by trains passing and repassing in the ordinary course of traffic, however unpleasant he may find it, nor of damage caused by the escape of sparks from the engines, if the company has used due caution to prevent such escape as far as practicable."

In *Vaughan* v. *Taff Vale Railway Co.,* 5 H. & N. 679, the court said: "A railway company authorized by the Legislature to use locomotive engines is not responsible for damage from fire occasioned by sparks emitted from an engine traveling on their railway, provided they have taken every precaution in their power and adopted every means which science can suggest to prevent injury from fire, and are not guilty of negligence in the management of the engine."

And Chief Justice Cockburn uses the following language: "Yet, when the Legislature has sanctioned and authorized the use of a particular thing, and it is used for the purpose for which it was authorized, and every precaution has been observed to prevent injury, the sanction of the Legislature carried with it this consequence that if damage results from the use of such thing, independently of negligence, the party using it is not responsible."

This case was approved in *Hammersmith etc. Ry Co.* v. *Brand,* reported in 4 English & Irish App. Cases, 171, where Mr. Justice Blackburn says: "I think it is agreed on all hands that if the Legislature authorizes the doing of an act which, if unauthorized, would be wrong and a cause of action, no action can be maintained for that act, on the plain ground that no court can treat that as a wrong which the Legislature has authorized, and consequently the person who has suffered a loss by the doing of that act is without remedy, unless in so far as the Legislature has thought it proper to provide for compensation to him. He is, in fact, in the same position as the person supposed to have suffered from the noise of traffic on a new highway is at

common law, and subject to the same hardship.    He suffers a
private loss for the public benefit."

The Supreme Court of the United States is to the same effect.
In *Transportation Co.* v. *Chicago,* 99 U. S. 635, 25 L. Ed. 336,
the court said:    "That cannot be a nuisance, such as to give a
common law right of action, which the law authorizes.    We
refer to an action at common law, such as this.    A Legislature
may, and often does, authorize and even direct acts to be done
which are harmful to individuals, and which, without the au-
thority, would be nuisances; but in such a case, if the statute be
such as the Legislature has power to pass, the acts are lawful,
and are not nuisances, unless the power has been exceeded.    In
such grants of power a right to compensation for consequential
injuries caused by the authorized erections may be given to those
who suffer, but then the right is a creature of the statute.    It has
no existence without it.    If this were not so, the suffering party
would be entitled to repeated actions, until an abatement of the
erections would be enforced, or perhaps he might restrain them
by injunction."    See, also, *Uline* v. *N. Y. Cent. R. Co.,* 101 N.
Y. 98, 4 N. E. 536, 54 Am. Rep. 661; *Sawyer* v. *Davis,* 136
Mass. 229, 49 Am. Rep. 27; *Heiss* v. *Railroad Co.* (Wis.), 34
N. W. 916; *Randle* v. *Pac. R. Co.,* 65 Mo. 325.

The decisions of this court are in harmony with these cases.
In *James River & Kanawha Canal Co.* v. *Anderson,* 12 Leigh,
278, the court held that an injunction would not lie at the in-
stance of a property owner, whose lands did not abut upon the
street at the point at which the defendant was excavating, to
enjoin the prosecution of the work.    Judge Allen, at page 305,
after alluding to the fact that the company had encroached upon
the street, said:    "Was the company authorized by its charter
to make this encroachment?    For, if it was, then, whatever in-
jury may ensue to the property holders on the street, an injunc-
tion cannot be awarded."

In *Richmond Traction Co.* v *Murphy,* 98 Va. 104, 34 S. E.

982, the tracks of the railroad company were laid in Broad street, in the city of Richmond, in front of a portion of a lot owned by Murphy. The track, as it left Murphy's lot, came close to the sidewalk, approaching the property line of the property owners abutting on the street, and immediately adjacent to the property of E. P. Murphy. By agreement, condemnation proceedings were had; and the commissioners reported that for the taking of the property of Murphy, and for damage to the residue of his lot by reason of the construction of the railroad in the street immediately in front of his property, he was entitled to $1,000, and further reported that, if he was entitled to damages by reason of the construction of the track immediately in front of the property adjacent to his lot, then he should be given $1,000 additional. But the court said he was entitled to the sum of $1,000 for the taking of his property, but that the injury done to his property by the construction of the railroad in front of the property adjacent to his lot was *damnum absque injuria,* and therefore no compensation could be allowed him.

Upon an appeal to this court, Judge Harrison delivered the opinion, saying: "To hold that each abutting lot was impaired in value by reason of the location of the road beyond its limits, and that the owner was entitled to receive compensation therefor, would so multiply the damages to be paid as to amount to a denial of the right to construct the road." See, also, *Smith* v. *City Council of Alexandria,* 33 Gratt. 208, 36 Am. Rep. 788; *Home etc. Co.* v. *City of Roanoke,* 91 Va. 52, 20 S. E. 895, 27 L. R. A. 551.

*Meyer* v. *City of Richmond* was a suit brought to recover damages against the Chesapeake & Ohio Railway Company and the city of Richmond for damages caused to the property of the plaintiff by the obstruction of the street upon which plaintiff's property abutted, caused by tracks, sheds, and fences of the railroad company built under authority of its charter, and with the assent of the city of Richmond, by which travel along the street

was arrested, and the property rights of petitioner as an abutter on said street were practically destroyed. It appears, however, that the structures complained of did not touch the property of the plaintiff. A judgment was entered in the Law and Equity Court of the city of Richmond for the defendant, and to that judgment a writ of error was denied by this court. The case was afterwards carried to the Supreme Court of the United States upon the ground that Meyer had been deprived of his property without due process of law. The Supreme Court took jurisdiction of the case, but ultimately affirmed the decision of this court. 172 U. S. 82, 19 Sup. Ct. 106, 43 L. Ed. 374. In the course of the opinion the court said: "The substantial thing is not that one may be damaged by an obstruction in a street—not that one may be specially damaged beyond others—but, is such damage a deprivation of property, within the meaning of the constitutional provision? According to the Virginia cases, an additional servitude may be said to be another physical appropriation, and hence another taking, and must be compensated. But the plaintiff's case is not within this doctrine, nor is there anything in the decisions of Virginia which makes consequential damages to property a taking, within the meaning of the Constitution of that State. Decisions in other States we need not resort to or review."

After reviewing a large number of cases from this and other States, the court held that consequential damage to property by an obstruction in a street is not a deprivation of the property, within the constitutional provision against depriving a person of property without due process of law.

We do not think that the demurrer should have been sustained because of the improper joinder of various and distinct causes of action accruing at different times, and resulting in different species of alleged injuries. Indeed, this ground of demurrer was not insisted upon in the argument, and is clearly not well taken. "Wherever causes of action are of the same nature, and

the same judgment is to be given in all, they may be joined in one declaration." 4 Minor's Inst. (3d Ed.) 1160.

We are of opinion that the third, fourth, fifth, and sixth counts were all demurrable, for the reasons assigned—with respect to the third and fifth, because the acts of negligence were not stated with reasonable certainty; and with respect to the fourth and sixth, because, as stated, the acts charged upon the defendant were authorized by its charter. But in order to secure this immunity, the power conferred by the Legislature must be exercised without negligence, with judgment and caution. For damage which could not have been avoided by any reasonable, practicable care on the part of those authorized to exercise the power, there is no right of action; but they must not do needless harm, and, if they do, it is a wrong against which the ordinary remedies are available. "If an authorized railway comes near my house, and disturbs me by the noise and vibrations of the trains, it may be a hardship to me, but it is no wrong. For the railway was authorized and made in order that trains might be run upon it, and, without noise and vibrations, trains cannot be run at all. But if the company makes a cutting, for example, so as to put my house in danger of falling, I shall have my action, for they need not bring down my house to make their cutting. They can provide support for the house, or otherwise conduct their works more carefully. When the com pany can construct its works without injury to private rights, it is, in general, bound to do so." Pollock on Torts (Webb's Am. Ed), *supra; Stearns* v. *City of Richmond,* 88 Va. 992, 14 S. E. 847, 29 Am. St. Rep. 758.

The judgment of the Law and Equity Court is therefore reversed, and the cause remanded, with leave to amend the declaration in any manner that the plaintiff may be advised, not inconsistent with the foregoing opinion.

*Reversed.*