## Robbins *v.* Scranton, Appellant.

217   577
225   1130

*Constitutional law—Article XVI, sec. 8 of the constitution—Property injured by public works—Speculative loss.*

Under article XVI, sec. 8 of the constitution, compensation for property injured by public works is not limited to abutting property, but applies to any works sufficiently near to make the injury proximate, immediate and substantial.   But unless the injury is so obvious as to admit of comparatively easy calculation as to the extent of the diminution of the value of the property, it may not fairly be considered as covered by the constitution.   Remote or speculative losses in the con-

duct of a business do not constitute a legitimate basis upon which to estimate damages to the real estate.

Where a city builds a viaduct in order to do away with a dangerous grade crossing, and it appears that access to a mill is cut off in one direction so that patrons of the mill are required to make a detour of two squares, and no land is taken from the mill owners, a jury, in estimating the damages to the mill should be allowed to compare the situation as it was after the completion of the entire scheme of improvements in connection with the viaduct with that which existed before its construction.

In such a case it is a fair question for the jury to determine whether or not the substitution of a safe way over the tracks, even though it be a little longer, does not fully compensate in its effect upon the market value of the property for the taking away of the nearer, yet dangerous method of approach, by means of the grade crossing as it existed before the viaduct was built.

Argued Feb. 25, 1907.   Appeal, No. 278, Jan. T., 1906, by defendant, from judgment of C. P. Lackawanna Co., March Term, 1903, No. 175, on verdict for plaintiff in case of C. W. Robbins and Frank M. Spencer, Copartners, trading as Robbins & Spencer, v. City of Scranton.   Before FELL, BROWN, MESTREZAT, POTTER and STEWART, JJ.   Reversed.

Appeal from award of jury of view.   Before KELLY, J.

At the trial when Henry Jifkins, a witness for plaintiff, was on the stand, the following offer was made:

Mr. Davis: We propose to prove by the witness on the stand that Schnell court was widened to fifty feet before the completion of the viaduct.   This to be followed by the testimony of the city clerk showing the legislation and the date thereof by the councils providing for the widening of Schnell court.

Mr. Warren: Tell us the legal purpose of the offer.

Mr. Davis: The legal purpose of this is that the jury may offset any damages which may be claimed by reason of the cutting off of their access by reason of the additional access afforded plaintiffs' property by reason of the widening of Schnell court.

Mr. Warren: The counsel for the plaintiffs object to the offer as incompetent, immaterial and irrelevant, not a legitimate and legal offset for the damages the plaintiffs may have

sustained by reason of the construction of the viaduct, but at the maximum merely a general benefit to the public generally in the locality, in which plaintiff has the right to share and for which he cannot be asked to account or to reduce his claim in the case now trying.

Mr. Davis: We propose to follow this by testimony showing that the widening of Schnell court was a direct and special benefit to the property of the plaintiffs in this case.

The Court: It seems to me we ought to have the specific dates with reference to these two improvements and respective ordinances which authorized them, before passing upon this offer.

Mr. Davis: The dates proposed to be proven by the defendant are as follows: That the ordinance providing for the construction of the viaduct, to wit: file of common council No. 31, 1900, was approved by James Moir, mayor, on November 17, 1900; that the date of the completion of the viaduct was August 5, 1904; that the resolution of council providing for opening of Schnell court between Seventh and Eighth streets to a uniform width of fifty feet and directing the director of public works to dispose of the buildings located upon the land necessary to be taken in the opening of said court, was approved March 14, 1904.

Mr. Warren: You also agree that the ordinance providing for the construction of the viaduct in no way refers to any change in Schnell court?

Mr. Davis: Yes. Also that the work of opening Schnell court to a uniform width in pursuance of the resolution of councils directing the same, was done in the month of July, 1904.

The Court: I will sustain the objection to the offer. It seems to me that the plaintiffs' damages were complete when the communication between Lackawanna avenue and Eighth street was completely cut off, and that the measure of damages must be ascertained according to the familiar rule of value before and after the injury, and that anything that was done subsequently to that by way of afterthought in an effort to reduce the damage to the plaintiffs' property cannot be considered in this case. The plaintiffs have a right to recover damages in money, and it is not within the power of the city

to contribute or to confer any other benefit upon them that they would be bound to accept in lieu of damages in money; and for the further reason that the improvement offered to be shown on Schnell court was a general public improvement conferring no doubt some benefit upon the plaintiffs, but conferring benefits upon all other property owners in the immediate vicinity as well, and conferring more or less benefit upon the traveling public. There is nothing in the original ordinance which provides for the viaduct which shows any contemplated change upon this street or court in question as part of the proposed public improvement or change. Neither is there anything in the ordinance providing for the improvement for the court, showing that it has any reference whatever to the building of the viaduct. Therefore, it seems to me, that it is a separate proposition entirely and one which cannot figure in the ascertainment of damages in this case which it is alleged resulted from the building of the viaduct in question.

Exception noted for defendant at whose request a bill is sealed. [1]

Defendant presented this point:

6. If the plaintiffs are still afforded safe, reasonable and convenient access to their property they cannot recover. *Answer:* The sixth point is refused; it is not necessary that I should read it to you. [3]

Plaintiffs presented this point:

4. The jury are to consider the subject-matter of this suit just as if they were called on to estimate the injury at the time of the construction of the viaduct when access from Lackawanna avenue to Eighth street was affected by the construction of the viaduct, which was in May, 1903. *Answer:* I affirm that proposition. [4]

Verdict and judgment for plaintiff for $10,350. Defendant appealed.

*Errors assigned* were (1) ruling on evidence, quoting the bill of exceptions, and (3, 4) above instructions, quoting them.

*David J. Davis,* city solicitor, with him *H. R. Van Deusen,* assistant city solicitor, for appellant.—Any fact which affects

the value of the land at the time of the injury is admissible:
Phila. v. Linnard, 97 Pa. 242 ; City of Allegheny v. Black, 99
Pa. 152 ; Phila. Ball Club v. Phila., 192 Pa. 632.

*S. B. Price* and *Everett Warren,* for appellee.

OPINION BY MR. JUSTICE POTTER, April 22, 1907 :

This case was a feigned issue, on an appeal from the award
of viewers appointed to assess damages by reason of the con-
struction of a viaduct on West Lackawanna avenue, from
Seventh avenue to Ninth avenue in the city of Scranton.    The
property of plaintiffs is not situated on Lackawanna avenue,
but it is upon the west side of Eighth avenue about 120 feet
to the north of Lackawanna, the lot being forty feet wide and
extending from Eighth avenue to the railroad tracks with
which it connects by means of a switch in the rear of the build-
ing.    The plaintiffs conduct a large flour and feed mill on the
premises, much of the grain being shipped in, and the product
out, over the railroad.    Formerly the tracks of the Delaware,
Lackawanna & Western Railroad crossed Lackawanna avenue
at grade, and as there were seven tracks in all, at this point,
over which passed about 270 trains per day, it constituted a
most dangerous grade crossing.

For the purpose of removing this great menace to the lives
of all who were compelled to use the crossing, the city con-
structed a viaduct.    Previous to its erection, patrons from the
west side of the railroad, who wished to drive to the mill of
the plaintiffs, could, after crossing the railroad tracks at grade,
turn to the left around the corner of Eighth avenue, and reach
the premises in that way.    Since the completion of the viaduct,
the same class of customers must now cross the viaduct and
continue one square farther to the east, to Seventh avenue,
and thence, by way of Schnell street, go directly back one
square to the property of the plaintiffs.    They are enabled in
this way to escape a dangerous grade crossing, but in order to
do so, are required to travel two squares farther, that is, go
one square beyond, and then one square back, to the mill.    In
returning to the west side of the tracks, the same class of pa-
trons, in addition to escaping the crossing of the tracks at
grade, find the grade of Lackawanna avenue from the railroad

to Ninth avenue has been very much improved by the construction of the viaduct.

The only reason which plaintiffs have for complaining of the improvement is the fact that access to Lackawanna avenue at grade at the end of Eighth avenue, is, as we have just pointed out, cut off by the location of the viaduct, and patrons from the west side of the tracks are obliged to travel two squares farther in order to drive to the doors of the mill. Of course, the building of the viaduct did not in any way affect the approach of patrons who came from the east, or the north, or the south. Its only effect was upon those desiring to use Lackawanna avenue, as a means of travel, to and from the west.

The ordinance providing for the erection of the viaduct was approved November 17, 1900, work upon it was begun April 27, 1903, and it was finally completed August 5, 1904. But access from the end of Eighth avenue to Lackawanna avenue, with teams and wagons, was no longer practicable after May 12, 1903. The sidewalks remained unobstructed so that foot passengers could go and come in that way.

Immediately opposite plaintiffs' mill an alley twenty feet wide, called Schnell court, ran from Seventh to Eighth avenue parallel with Lackawanna avenue. By resolution of councils, approved March 14, 1904, it was ordered that Schnell court, between Seventh and Eighth avenues, be opened to a uniform width of fifty feet, and the work of widening was done in June or July, 1904, although the grading does not appear to have been completed until October, 1904. The result was to give plaintiffs the benefit of a street fifty feet wide, beginning directly across Eighth avenue from their property, and extending to Seventh avenue, which crossed Lackawanna avenue at grade, at the point where the elevation of the viaduct began.

The proceedings were somewhat prolonged, but the building of the viaduct and the widening and grading of Schnell street may, we think, under the evidence, be fairly regarded as part of the same general plan, by which it was sought to benefit the public, and minimize the inconvenience to the plaintiffs and other property holders in the vicinity, as much as possible. There could have been no object in improving Schnell street, and converting it from a narrow alley into a wide thorough-

fare, except to improve the means of access to the end of the viaduct. Schnell street led directly from plaintiffs' property to Seventh avenue, by which the viaduct could be directly gained. Necessarily, the viaduct had to be elevated, and if the property on Eighth avenue was to get any advantage from the overhead crossing, an easy grade must be opened by which it could be reached. Schnell street afforded this approach.

This court held in Mellor v. Phila., 160 Pa. 614, that under a proper construction of article XVI, section 8 of the constitution, compensation for property injured by public works is not limited to abutting property, but applies to any works sufficiently near to make the injury proximate, immediate and substantial. But unless the injury is so obvious as to admit of comparatively easy calculation as to the extent of the diminution of the value of the property, it may not fairly be considered as covered by the constitution. Remote or speculative losses in the conduct of a business do not constitute a legitimate basis upon which to estimate damages to the real estate. In the present case, not an inch of ground was taken from plaintiffs, and there was no interference with the conduct of the business, except in so far as it was conjectured that some of the patrons upon the west side of the tracks might be deterred from driving to the mill, because they would have to use the viaduct which would carry them one square farther to the east, before turning to the mill, than when they were at liberty to risk the crossing at grade. It would seem to be a fair inference that this great public improvement by which the grade crossing was avoided would enure to the benefit of the patrons of the plaintiffs' mill, as much as to any other portion of the public; and would rather tend to draw business to the mill from the vicinity west of the tracks, than otherwise. But at any rate the jury should have been allowed to compare the situation as it was after the completion of the entire scheme of improvements in connection with the viaduct, with that which existed before its construction. Admittedly, none of the plaintiffs' property was taken, and the only question was whether it was injured, and if so, to what extent. The problem before the jury was to determine whether the effect of the improvements as a whole had been to work any proximate, immediate and substantial injury to the value of the real estate.

As we. have said, before the viaduct was built the patrons coming from the west had to run the gauntlet of the grade crossing, but when that was passed they could turn directly into Eighth avenue, and in that way reach the mill. After the viaduct was completed they could cross the tracks in peace and comfort, but had to travel about two blocks farther in all, to pass over the viaduct and back to the mill. Was this a drawback as compared with the former method, and if so, was it a substantial one, sufficient to depreciate the value of the real estate of the plaintiffs? Only the retail portion of the business was affected, and of that, only the trade of the patrons on the west side of the tracks was concerned in the change. When the trial judge excluded the testimony in regard to the widening and grading of Schnell street, he prevented the jury from considering the situation as it actually existed when the whole scheme of improvements at that point was completed by the city. It was a fair question for the jury to determine whether or not the substitution of a safe way over the tracks, even though it were a little longer, did not fully compensate in its effect upon the market value of the plaintiffs' property, for the taking away of the nearer, yet extremely dangerous, method of approach from the west, by means of the grade crossing as it existed before the viaduct was built. The beneficial effect of the viaduct in safeguarding the patrons of the mill, who approached from the west, and the possible injury to the trade by deflecting it from a direct approach, were so interwoven that it was not possible to ascertain one, without considering the other.

The court below applied to this case the rule as to the time for estimating the damages, which properly applies when property is actually taken under the right of eminent domain. But no property was actually taken here, and the degree of injury, if any, which was inflicted could only be determined after the entire plan of improvement had been worked out. We can see no good reason for attempting to confine the estimate of the injury to the conditions as they happened to exist on May 12, 1903. The scheme of improvement in connection with the building of the viaduct was by no means complete at that time. If as a result of the entire plan of improvement, the plaintiffs were afforded safe and convenient access to their

property, they could not be said to have suffered any permanent, substantial and proximate injury, as the result of the change.

The first, third and fourth assignments of error are sustained and the judgment is reversed, with a venire facias de novo.