Syllabus.

# Richmond,

TERRELL v. CHESAPEAKE AND OHIO RAILWAY CO.

November 18, 1909.

Absent, Buchanan, J.

1. RAILROADS—*Nuisance—Absence of Negligence.*—A declaration which sets out a nuisance committed by a railroad company in its private capacity states a good cause of action, though no negligence be charged.

2. RAILROADS—*Nuisance—Firing Up Engines—Site—Negligence.*—While it is necessary for a railroad company to fire up and clean its engines for the purpose of performing its public functions, yet, in selecting its site for doing such work, it is acting in its private capacity, and not in the performance of its public functions, and is liable, as a rule, for a nuisance resulting therefrom, even though the nuisance is not negligently caused.

3. RAILROADS—*Nuisance—Terminal Yards—Injury to Neighbors.*—Although it may be difficulty for a railroad company to find a suitable site for a permanent terminal yard on which it may do the necessary preparation of its engines for use, if it is held liable for damages to individuals who may complain of a private nuisance created thereby, still the law gives a remedy to every citizen for the wrongs he may sustain, even though inflicted by forces which constitute factors in the material development and growth of the country, and this remedy it is the duty of the courts to enforce.

4. NUISANCE—*Damages—Damnum Absque Injuria.*—A loss resulting from a lawful act done without negligence is *damnum absque injuria*, but a nuisance is unlawful and, however carefully maintained, the party maintaining it is liable for the resulting injury to others.

5. NUISANCE—*Legislative Authority.*—The fact that a person or corporation has authority from the legislature or a municipality to do certain acts does not give the right to do such acts in a way constituting an unnecessary nuisance.

Error to a judgment of the Corporation Court of the city of Charlottesville in an action of trespass on the case. Judgment for the defendant. Plaintiff assigns error.

*Reversed.*

The opinion states the case.

*Dabney & Fowler* and *Micajah Woods,* for the plaintiff in error.

*D. H. & Walter Leake,* for the defendant in error.

CARDWELL, J., delivered the opinion of the court.

The plaintiff in error brought an action of trespass on the case against the Chesapeake and Ohio Railway Company, and the declaration states that he was seised and possessed of a certain lot of land with a dwelling house thereon, known as No. 923 East Market street, in the city of Charlottesville, on the north side of said street, which lot fronts about 60 feet on said street and runs back in a northerly direction between parallel lines about 200 feet; that the Chesapeake and Ohio Railway Company, a corporation organized under the laws of the State of Virginia, was possessed of a certain lot of land lying on the south side of East Market street in said city, and directly opposite the plaintiff's premises; that on a part of its said lot, some time prior to the year 1903, the defendant had erected a building known as a roundhouse, but a large part of the defendant's lot in front of plaintiff's premises was, prior to the year 1905, used for the purpose of receiving, storing and delivering car and locomotive supplies and materials; that it became and was the duty of the defendant so reasonably to use its said lot as not to injure or interfere with the possession, use and enjoyment by the plaintiff of his said property; "yet the said defendant, not regarding its said duty in this behalf, but contriving and wrongfully and unjustly intending to injure and aggrieve the said plaintiff in the use and possession of his said

property, heretofore, to-wit: on the ———— day of ————, 1905, laid on the said part of its said lot not occupied by the said roundhouse, and very near, to-wit: 75 feet from and in front of the said plaintiff's property, a number of short railroad tracks, to-wit, seven, in a segment or semi-circle, which said tracks have been used by the said defendant for the purpose of standing, storing and keeping such of its locomotives as were not in immediate use on divers days and times from the above date to the commencement of this suit"; that "here numbers of locomotives were kept by said defendant and cleaned, fired, steamed and repaired, without any roundhouse or other structure inclosing or covering the same, and without smoke-stacks of sufficient height to carry the steam, smoke, dust, ashes, cinders and odors above the said plaintiff's property"; that "from the engines so placed, hostled, tended and handled there were daily, and many times during the day and night, the ringing of bells, the blowing of whistles, the prolonged and deafening roar of steam when boilers were blown. off to be washed, and the noise of blowers at work raising steam, and vast clouds of smoke, soot, dust, cinders and ashes poured from the smokestacks of the said locomotives over, upon, into and through and about the said plaintiff's dwelling and prem-ises; and when the doors and windows of the said dwelling were open for light and air, smoke, cinders, soot, ashes and dust were discharged from said locomotives and blown in and through said doors and windows, settling upon .the occupants of the house, and upon the furniture and furnishings, soiling clothes, bedding, curtains, food and other articles therein, and accompanied by foul and offensive odors, which tainted and corrupted the atmosphere and rendered the dwelling and premises unhealthy and unfit for habitation; and also covered the shade trees in front of said dwelling with soot and dust, and blackened and destroyed them and the flowers and other vegetation on and about said premises; and by means of the said smoke, dust and soot discharged as aforesaid on and about

the said plaintiff's premises, the fences thereon and the front of his said dwelling have been blackened and rendered most dirty, disreputable and unsightly in appearance. And by reason of the aforesaid unreasonable, wrongful and unjust use by the said defendant of its said premises the said plaintiff has been and is greatly damaged in the use and possession of his said property, and the marketable and rental value of the same has greatly depreciated by means of the committing of the grievances as aforesaid by the said defendant. To the damage of the said plaintiff $1,500.00."

The defendant demurred to the declaration, in which demurrer the plaintiff joined, the grounds of demurrer being that no negligence on defendant's part is alleged, and that independent of negligence the defendant is not liable.

Upon the hearing of the cause upon the demurrer the Corporation Court of Charlottesville sustained the demurrer, and to that judgment this writ of error was awarded.

That the defendant is a public service corporation is not questioned, and it is also conceded that the declaration sets out a nuisance, but the claim is that it is not an actionable nuisance. Therefore the sole question for determination is whether the nuisance was committed by the defendant in its *private* capacity, or as incidental to its *public* function of running trains for the carrying of passengers and freight.

The declaration, it may be said, is in all of its essential features identical with that considered by this court in *Townsend* v. *Norfolk Ry. & L. Co.,* 105 Va. 22, 52 S. E. 970, 115 Am. St. Rep. 842, 4 L. R. A. (N. S.) 87, and the plaintiff urges that that case controls the decision in this; while the defendant, with equal earnestness, claims that it is controlled by the earlier case of *Fisher* v. *Seaboard A. L. Ry. Co.,* 102 Va. 363, 46 S. E. 381.

In the earlier of these cases Fisher sued to recover damages for a nuisance caused by "running trains and locomotives over and upon" defendant's track and trestle; while in this case the

declaration alleges that defendant used its lot, in front of and adjacent to its roundhouse, for the purpose of "standing, storing and keeping such of its engines as were not in use," and "cleaning, firing, steaming and repairing" same, and that "from the engines so placed, hostled, tended and handled," the nuisance complained of resulted.

In the *Townsend case,* as in this, negligence was not charged, but in both facts constituting the nuisance are duly alleged, and in the *Townsend case* the operation of a powerhouse for generating electricity to run an electric railway was the *modus injuriae,* and this court, though conceding that the electric railway was a public service corporation with the power of eminent domain, held that it had no legislative authority to operate its powerhouse to the injury of the plaintiff, Townsend, on the ground that such operation was not incidental to its public function of running cars, the opinion saying: "It is true that an electric railway cannot be operated without a powerhouse. It is true that an enginehouse is a necessary adjunct to a steam railway; but they are incidents to the operation of the road, with which the public has no concern."

It cannot be maintained that the storing, blowing out, cleaning and firing of engines on an open yard is more incidental to the public function of carrying passengers than a roundhouse for the sheltering of engines, or a power-house for the generation of electrical power. The one is not, when considered on a demurrer to a declaration or to a plea setting up such a defense, any more incidental to the performance of the public function of the carrier than the other. The true distinction between a public and a private function, when exercised by a public service corporation, is so lucidly and exhaustively drawn in the *Townsend case* that little need be added to what is there said. As a preface to the discussion of the question in that case the opinion says: "A public service corporation is to be considered in two aspects. It has duties which it owes to the public, and which it must perform. It has other duties not of

a public nature, which are incidental to those of a public character, in the performance of which it stands upon the footing of a private corporation. With respect to the duties of the first class, it may be said that, in doing that which under the law it may be required to do, it cannot be considered as doing an unlawful act; and if a lawful act be done without negligence, any injury which it occasions is *damnum absque injuria."*

Authorities are cited with approval as follows: "A railway company is authorized to acquire land within specified limits, and on any part of that land to erect workshops. This does not justify the company, as against a particular householder, in building workshops so situated (though within the authorized limits) that the smoke from them is a nuisance to him in the occupation of the house." Pollock on Torts (2d ed.), p. 158.

"The common carrier serves both the public and itself. It has its public and private functions. The public part is the exercise of its franchise for the accommodation of the public. The private part is its incidental business, with which the public is not concerned, and which the company manages for its own interest. The company carries passengers over its road as a public duty, but the generation of power to propel cars is the private business of the company. Whatever is necessary to the exercise of the franchise is for the benefit of the public, but that which pertains simply to means of supply is a private business of the company." *In re Rhode Island R. Co.,* 22 R. I. 457, 48 Atl. 592, 52 L. R. A. 879.

"But over and beyond this, we think a corporation in selecting a place for its roundhouse acts in a private capacity and is responsible for the injurious consequences which may result from its use." *L. & N. Term. Co.* v. *Jacobs,* 109 Tenn. 727, 72 S. W. 957, 61 L. R. A. 192, citing *Railroad* v. *Fifth Bap. Church,* 108 U. S. 317, 27 L. Ed. 739, 2 Sup. Ct. 719; *Cogswell* v. *Railroad,* 103 N. Y. 10, 8 N. E. 537, 57 Am. Rep. 701.

With respect to the *Fifth Baptist Church case* the learned counsel for the railway company in this case make the point that while the opinion in that case used the expression, "A railroad, in selecting a place for repair shops and enginehouse, acts altogether in its private capacity, there is nothing in the case with regard to the public and private capacity of a railroad, the decision being rested emphatically upon the proposition that in selecting the place for its roundhouse the railroad had made an unreasonable choice, a claim that is not made in the case at bar." This view of that case, however, was not taken by this court in the *Townsend case,* nor in the large number of cases in which it has been cited with approval. It is not necessary to the liability of a public service corporation for a nuisance caused by an unlawful use of a powerhouse, or of a site selected and used as a roundhouse, that the corporation had made an unreasonable selection, but the question in this as in the *Townsend case* is, was the corporation acting in its *private* capacity, as distinguished from its *public* function, when operating the nuisance complained of? In the *Townsend case* the corporation was held to be acting in its *private* capacity as distinguished from its public function when so operating its powerhouse as to cause a nuisance damaging to adjacent property owners, and the effort to distinguish that case from this is in vain.

It is very true that it is necessary for a public service corporation, having the franchise to construct and operate a railway line for the carrying of passengers and freight, to fire up and clean its engines for the purpose of performing its public functions; and it is equally true that it is necessary for a street railway to have and operate a powerhouse for the generation of its transportation power; but the one in selecting and operating its powerhouse, as well as the other in selecting a site for its roundhouse and making use thereof is, as the great weight of the authorities conclusively show, to be held as acting in its *private* capacity, and not in the performance of its *public* func-

tion, and is liable, as a rule, for a nuisance resulting there-from, even though the nuisance is not negligently caused. See report of the *Townsend case,* with authorities 4 L. R. A. (N. S.) 87.

In answer to the argument of the learned counsel for the railway company in this case, that the view just stated is in conflict with the decision in the *Fisher case,* and that this case is controlled by that case and not the *Townsend case,* we deem it only necessary to refer to the exhaustive opinion of Keith, P., in the last-named case, upon a petition for a rehearing, where the authorities are reviewed at greater length than in the original opinion, the result being a denial of the prayer for a rehearing.

It is finally argued on behalf of the railway company in this case: "If the appellee is to be made to pay damages in this case, and this principle is established as the law in Virginia, then it is difficult to perceive how, where and when a railroad company in this State may establish a permanent terminal yard on which it may do its business necessary to the 'hostling' of its engines. If said principle is once established, the running of trains upon the roads in this State will become difficult—at best, a most expensive matter—and possibly may be prevented entirely."

Similar suggestions as to the consequences of adhering to the rule of law established by the authorities applicable to cases of this character were made in the *Townsend case,* to which the opinion replied as follows: "It would be a source of regret if, in the administration of justice by the establishment and enforcement of sound principles, the prosperity of our people should be hindered or checked, but it would be not only a source of regret, but of reproach, if material prosperity were stimulated and encouraged by a refusal to give to every citizen a remedy for wrongs he may sustain, even though inflicted by forces which constitute factors in our material development and growth. Courts have no policies, and cannot permit consequences to in-

fluence their judgments further than to serve as warnings and incentives to thorough investigation and careful consideration of the causes submitted to them. Those duties being faithfully performed, courts may await the result with patience, if not always with confidence, and say with the great Lord Mansfield, '*Fiat justitia, ruat coelum.*' "

We have not deemed it necessary to consider the argument of the learned counsel for the plaintiff, that even if the nuisance complained of were done in the exercise of a public function, the demurrer to the declaration should be overruled, under sec. 58, art. IV of the present Constitution, since the injury from the engines, as alleged in the declaration, was done after the adoption of the Constitution in 1902, when there was added to the provision of the former Constitution, with respect to the taking of private property for public use, the provision that *damage* to property, even for a public use, shall be compensated for. The purport and effect of this change in the Constitution, which we do not think is necessary to be considered again here, was fully considered and determined in *Tidewater Ry. Co. v. Shartzer*, 107 Va. 562, 59 S. E. 407, 17 L. R. A. (N. S.) 1053, and we shall be content with a mere reference to the opinion in that case.

The decision of the *Townsend case,* which is conclusive of this upon the demurrer to the declaration, was based upon the principle that a nuisance is unlawful; and though when an injury results from a lawful act, done without negligence, the injury is *damnum absque injuria,* yet however carefully one may maintain a nuisance he is liable for the resulting injury to others. See also Wood on Nuisances, pp. 709, 1277, where the rule is clearly stated and discussed.

The principles of law applicable to such a case are also clearly and forcibly stated in 29 Cyc., pp. 1198-1199, as follows:

"A statutory sanction cannot be pleaded in justification of acts which by the general rules of law constitute a nuisance, unless the acts complained of are authorized by the express

terms of the statute under which the justification is made, or by the plainest and most necessary implication from the powers expressly conferred, so that it can be fairly stated that the legislature contemplated the doing of the very act which occasions the injury.  So in an action for a nuisance consisting of smoke entering plaintiff's house from defendant's chimneys, it is no defense that the chimneys are as high as the city regulations for chimneys require, if in fact they are not high enough to keep the smoke out.

"It is a condition always implied by law that rights granted or regulated by statute shall be exercised by their possessors with due regard to the rights of other persons, and so the fact that a person or corporation has authority from the legislature or a municipality to do certain acts does not give the right to do such acts in a way constituting an unnecessary nuisance.  Thus the fact that a railroad is constructed and operated under statutory authority does not deprive neighboring property-owners of their remedy for annoyances and injuries not necessarily incident to the operation of the road in the vicinity.  Neither can defendant's possession of the right of eminent domain legalize a nuisance, but until defendant has exercised such power and by the authority thereof acquired plaintiff's property, defendant's illegal acts resulting in the substantial impairment or destruction of the property constitute an actionable nuisance."

See also, *Rosenheimer* v. *Standard Gas Light Co.,* 36 N. Y. App. Div. 1, 55 N. Y. Supp. 192; *Gunster* v. *Met. Elec. Co.,* 214 Pa. 628, 64 Atl. 91.

We are of opinion that the judgment of the corporation court sustaining the demurrer to the declaration in this case is erroneous.  Therefore, it will be reversed, the demurrer overruled, and the case remanded to be further proceedd with in accordance with the views herein expressed.

*Reversed.*