DEAN v. SOUTHERN RY. CO. IN MISSISSIPPI.

[73 South. 55.]

RAILROADS. *Operation. Noise. Damage.*

Where after the construction of defendant's main line of rail-
road, plaintiff acquired a residence a short distance from the
right of way, and thereafter to furnish facilities to a compress
company defendant, over its own property, constructed a spur
track leading to the compress, and the business done over this
spur track was of the same character as that done at regular
freight depots, such spur track was installed to serve the general
public, and the act of installation must be characterized as a
public and not a private act of the railway company. In such
case where there was no complaint or proof that smoke, dust,
sparks or cinders were projected by defendant's engines and
trains over and upon any of plaintiff's property, but the sole
ground of complaint was the noise produced by the orderly
operation of the cars, the plaintiff could not recover for in-
juries caused only by the noise, it being a case of *damnum abs-
que injuria.*

APPEAL from the circuit court of Leflore county.

HON. F. E. EVERETT, Judge.

Suit by G. G. Dean against the Southern Railway Com-
pany in Mississippi. From a judgment for defendant,
plaintiff appeals.

Mr. Dean, the appellant, is a resident citizen of Green-
wood, Miss., and in this action complains of the Southern
Railway Company, the appellee, on account of the noise
made by the operation of appellee's trains over and upon
a certain spur or service track placed by the railway com-
pany in the city of Greenwood, near Mr. Dean's home, to
accommodate the business of a large compress.

At the time this suit was instituted Mr. Dean was about
seventy years old, and was the owner of a lot upon which
was his residence, a servant's house, cook's house, and
barn, and also a residence constructed by him for the pur-
pose of renting to tenants. It appears that the main
line of the Southern Railway Company in Mississippi

was constructed in 1888 or 1889 by the Georgia Pacific
Railroad Company, and ran across the northern end of
block 1, which was divided into four lots, one of which,
lot 4, Mr. Dean purchased in 1893 or 1894. At the time
he purchased his lot there was a residence thereon, into
which he, with his family, moved. His family consists
of himself, his wife, his adult son, Tom, who furnished
the money to pay for the property, and a granddaughter
of the plaintiff. One of the houses was constructed by
Mr. Dean, at a cost of one thousand dollars, after he
purchased the lot. A map is referred to by counsel, but
this map is not in the record, and it is difficult to deter-
mine the exact measurements in reference to the location
of plaintiff's property from the spur track in question.
It appears, however, that Mr. Dean's home adjoins the
main right of way of appellee, and that about a year
before the institution of this suit a spur track was in-
stalled by the railroad company across the main line
from Mr. Dean's home; the switch or beginning of this
spur track being about one hundred and fifty feet north-
west of Mr. Dean's property, and projecting a distance
along the northern boundary of the right of way, esti-
mated as two hundred and fifty or three hundred yards.
This spur track runs into a large compress, and was
placed there for the purpose of unloading and loading
cotton handled by the compress. This is a suit for dam-
ages to plaintiff's property by reason of the noise made
by the cars of appellee as they are drawn in and our
over this spur track. Plaintiff and his son testify that
in placing cars on this side track what is known as "run-
ning switches" are made, some of the cars, when the
switch is thrown, coming up on the main line opposite
plaintiff's house. There is evidence that the noise is so
great that plaintiff and his family cannot rest well at
night, and at times cannot well hear conversation when
this switching is going on. There is evidence also that
the steam engine employed for the purpose of placing
and taking out cars buzzes, and thereby adds to the noise

complained of. Mr. Tom Dean, plaintiff's son, testifies that the portion of the spur track across the main line directly opposite the house and on the north side of the main line is about two hundred and twenty-five feet from the dwelling house.

At the conclusion of plaintiff's testimony there was a motion to exclude the evidence and to grant a peremptory instruction in favor of appellee. This motion was by the court sustained, and judgment accordingly entered in favor of the defendant. From this judgment, appellant appeals.

Monroe McClurg, for appellant.

Catchings & Catchings, for appellee.

STEVENS, J., delivered the opinion of the court.

While the evidence on behalf of plaintiff in the court below undisputably shows that the noise from the operation of appellee's freight trains over and along the spur track complained of is at times very great, so much so that plaintiff could not sometimes sleep well at nights, and at times could not hear well a conversation in his home, we are nevertheless forced to the conclusion that under the facts of this record a case was not made out, and the action of the court below in excluding plaintiff's testimony should be approved.

The residence of plaintiff is on the south side of the right of way over which the main line of railway runs, and this residence faces south. The spur track was installed on the opposite side of the main line, north of plaintiff's property, and leads to and is made necessary by the business done by and at a large compress. This spur track in no wise invades the plaintiff's property, but is on the private right of way of the railroad. It does not run over or along any street in front of plaintiff's property. There is no complaint or proof that smoke,

dust, sparks, or cinders are projected by appellee's engines and trains over and upon any of plaintiff's property. The sole ground of complaint is the noise produced by the operation of cars.

It may be conceded that noise, under some circumstances, may be so great as to amount to a private nuisance. The evidence in the instant case shows that the noise occasioned by the use of the spur track is no greater than is necessary in the operation of the trains and the doing of needed switching. Plaintiff does not complain of private switchyards installed by the railroad company. The spur track here complained of is a service track, made necessary for the depositing and taking aboard of large quantities of cotton handled by a large compress—the legitimate railroad business required by a legitimate compress business. There is no contention by appellant that this service track is unnecessary, or that there is any negligence by the railroad company, either in the selection of its engines and cars or in the way they are handled and switched at this point. The compress company had the right to call for the installation of this service track, and, if the railroad company should decline to install or furnish this track, it could be compelled to do so by the Railroad Commission. The business done over this spur track therefore is the same character of business done at the regular freight depots. The spur track was installed to serve the public generally, and the act of installation must be characterized as a public and not a private act of the railway company. The noise produced by the defendant's trains over and upon this spur track falls in the same class as the noise produced by the operation of trains over the main line of railway. Railroad trains cannot be operated without noise. A material amount of noise is produced by steam railways, street railways, manufactories, automobiles, and various other agencies employed by modern civilization. If railway trains were noiseless, then it would profit one nothing to stop and listen at a crossing. The

greater weight of authority sustains the holding that any injury which is a result of noise produced by the operation of trains on main lines, even though it may at times inconvenience and irritate, is *damnum absque injuria.*

The legal principles contended for by learned counsel for appellant are, in the main, perfectly sound, but inapplicable to the facts of this case. It may be conceded that a railroad company is not protected by its charter in creating a private nuisance. It cannot locate its machine shops, roundhouses, coal chutes, water tanks, or private switchyards near or adjacent to private property under such circumstances as to create a private nuisance and thereby depreciate or damage private property. In the placing or constuction of these conveniences the railroad company has the power of selection; its act in placing or installing these necessary conveniences must be classed as the private acts of a public corporation. In placing these conveniences it has no greater rights, of course, than any individual or private corporation would enjoy. But in the installation of a spur track like the one here complained of the railroad company has no option. It must afford the service, and in doing so it is serving the public generally. The cotton industry of the country demands compresses, and the patronizing public have a right to have their cotton transported by appellee and deposited at this compress, and taken therefrom as occasion demands. If the railroad company operates trains properly equipped and in the usual way, without negligence, the noise produced is a necessary incident to the business done by appellee as a common carrier. This distinction is clearly drawn and the doctrine abundantly supported by the leading case relied upon by counsel for appellant. Counsel relies with confidence on the case of *Matthias* v. *Minneapolis, etc., R. Co.,* 125 Minn. 224, 146 N. W. 353, 51 L. R. A. (N. S.) 1017, and says in his brief that:

This case "was presented with great research and learning; the court gave the case the greatest consideration, and the opinion is of the highest order of ability."

Looking to the opinion, then, in the Matthias Case, we quote with approval the very distinction made by it and all of the leading authorities. The court says:

"And as sustaining the view herein before expressed that railroad shops, roundhouses, and switchyards like the one in question here stand on a different footing from tracks between stations, passing tracks, depots, freighthouses, and yards for receiving and delivering shipments, in respect to their location and operation being a private injury or nuisance which the law will redress, may be cited *Cogswell* v. *N. Y., etc., Ry. Co.,* 103 N. Y. 10, 8 N. E. 537, 57 Am. Rep. 701; *Spring* v. *Delaware, etc., Ry. Co.,* 88 Hun, 385, 34 N. Y. Supp. 810; *Wylie* v. *Elwood,* 134 Ill. 281, 25 N. E. 570, 9 L. R. A. 726, 23 Am. St. Rep. 673; *Louisville & Nashville Terminal Co.* v. *Lellyett,* 114 Tenn. 368, 85 S. W. 881, 1 L. R. A. (N. S.) 49. In the last-named case it is held that a terminal railway company in exercising the discretion conferred by the legislature to locate its yards and terminal facilities acts at its peril not to create a nuisance to neighboring property. There the plaintiff's property was two hundred and twenty-five feet away from the original tracks; the terminals were located beyond these. The court says: 'We are of opinion that, in so far as the growth and increase of travel and traffic into and through the station has brought discomfort to plaintiff, he is without remedy. In other words, the roads have the right to accommodate their increasing traffic and travel without liability, so long as their trains are operated without negligent disregard of the comfort and usable value of plaintiff's property, and, for this purpose, to lay such additional tracks, side tracks, and switches into and through the station as may be required to accommodate such travel and traffic, both passenger and freight, and it is only for the additional conveniences of roundhouses, sandhouses,

coal bins, coal chutes, and the switchyards and tracks necessary to operate such additional conveniences, which might be located elsewhere, though not so advantageously, perhaps, that the plaintiff can complain, if they materially damage plaintiff's property.' In *Townsend et al.* v. *Norfolk Ry. & L. Co.*, 105 Va. 22, 52 S. E. 970, 4 L. R. A. (N. S.) 87, 115 Am. St. Rep. 842, 8 Ann. Cas. 558, it was said: 'Damage occasioned by the location of a power house (for the railway) does not stand on the same footing as damage resulting from the operation of a railway along an authorized route.'   .   .   .

"Cases relied on by defendant come nearly all within the principle conceded by plaintiff, namely, that in so far as disturbance, smoke, and dust emanate from the operation of a railroad between and at stations, there is no redress for the individual who may suffer in the use and enjoyment of his property. *Twenty-Second Corp.; etc.,* v. *Oregon S. L. Ry. Co.*, 36 Utah, 238, 103 Pac. 243, 23 L. R. A. (N. S.) 860, 140 Am. St. Rep. 819, was a case where increasing traffic required additional operating or passing tracks. *Hyde* v. *Minn. Ry. Co.*, 29 S. D. 220, 136 N. W. 92, 40 L. R. A. (N. S.) 48, related to tracks in connection with a properly located depot. *St. Louis, San Francisco, etc., Ry. Co.* v. *Shaw*, 99 Tex. 559, 92 S. W. 30, 6 L. R. A. (N. S.) 245, 122 Am. St. Rep. 663, is evidently not out of harmony with *Rainey* v. *Red River Ry. Co., supra* [99 Tex. 276, 89 S. W. 768, 90 S. W. 1096, 3 L. R. A. (N. S.) 590, 122 Am. St. Rep. 622, 13 Ann. Cas. 580]; for it relates to the necessary facilities and operations of trains at a properly located station. It holds that personal discomfort to adjoining proprietors occasioned by the operation of cars in the station yards cannot be made the basis of a cause of action against a railroad company, when there is nothing improper in its selection of the particular locality for its tracks or in the operation of its cars thereon, and no depreciation in the value of the complainant's property therefrom. The court says: 'It is hardly necessary to

add that side tracks at such stations are an essential part of the road, and are as much authorized and required as the main line and station. It cannot be held, therefore, that the mere location of such tracks and stations near the property of others gives rise to the liability here asserted. If so, the same liability would arise to every one who might be annoyed by trains passing along the main line, for no reason could be given for liability in one case which would not be valid in support of it in the other; and yet it has often been held that no such liability can be sustained consistently with the law which authorizes the construction of such *quasi* public works.' *Dolan* v. *Chicago, etc., Ry. Co.,* 118 Wis. 362, 95 N. W. 385, holds that the undesirable consequences to nearby property from the location of a railroad stockyard for receiving cattle for shipment, as required by statute, does not constitute a private nuisance if constructed and managed with reasonable care. Even in the absence of a statute on the subject, public convenience, as already intimated, would in most instances require shipping stockyards near or at the station.''

It will be observed that the Minnesota court referred to the case of *Townsend* v. *Norfolk, etc., R. Co.,* 105 Va. 22, 52 S. E. 970, 4 L. R. A. (N. S.) 87, 115 Am. St. Rep. 842, 8 Ann. Cas. 558, involving the location of a power house. It was held that the railroad company had no right to locate its power house at a place and in a way to create a nuisance; that its act in so doing was the private and not the public act of a corporation. And the same distinction is made and the same doctrine applied in the well-reasoned case of *Terrell* v. *Chesapeake & Ohio R. Co.,* 110 Va. 340, 66 S. E. 55, 32 L. R. A. (N. S.) 371. The court, by Cardwell, J., says:

''It cannot be maintained that the storing, blowing out, cleaning, and firing of engines on an open yard is more incidental to the public function of carrying passengers than a roundhouse for the sheltering of engines, or a power house for the generation of electrical power. The

one is not, when considered on a demurrer to a declaration or to a plea setting up such a defense, any more incidental to the performance of the public function of the carrier than the other. The true distinction between a public and a private function, when exercised by a public service corporation, is so lucidly and exhaustively drawn in the Townsend Case that little need be added to what is there said. As a preface to the discussion of the question in that case the opinion says: 'A public service corporation is to be considered in two aspects. It has duties which it owes to the public, and which it must perform. It has other duties not of a public nature, which are incidental to those of a public character, in the performance of which it stands upon the footing of a private corporation. With respect to the duties of the first class, it may be said that, in doing that which under the law it may be required to do, it cannot be considered as doing an unlawful act; and, if a lawful act be done without negligence, any injury which it occasions is *damnum absque injuria.'* "

The principle announced in the Townsend Case is the underlying principle which governed the decision of our own court in the case of *King* v. *Railway Co.*, 88 Miss. 456, 42 So. 204, 6 L. R. A. (N. S.) 1036, 117 Am. St. Rep. 749. The facts of the instant case differentiate it from the case of *Railway Co.* v. *King*, 93 Miss. 379, 47 So. 857, 22 L. R. A. (N. S.) 603. In the last-named case there is evidence that the railroad company projected soot, smoke and dirt—deleterious agencies. The legal principles that should control the instant case are announced with clearness and ability in the case of *Roman Catholic Church* v. *Penn. R. R. Co.*, 207 Fed. 897, 125 C. C. A. 629, L. R. A. 1915E, 623. The opinion of Judge GRAY in that case appears to us a just and sound pronouncement, and many of the authorities referred to by Judge GRAY are in point here. The opinion clearly differentiates the case at bar from the leading case of *Baltimore & Pacific Ry. Co.* v. *First Baptist Church*, 108 U. S. 317, 2 Sup. Ct. 719, 27

L. Ed. 739; as also the so-called "Elevated Railroad Cases." *Lahr* v. *Metropolitan El. Ry. Co.*, 104 N. Y. 268,. 10 N. E. 528; *Story* v. *New York El. R. Co.*, 90 N. Y. 122, 43 Am. Rep. 146; *Bohm* v. *Metropolitan El. Ry. Co.*, 129 N. Y. 576, 29 N. E. 802, 14 L. R. A. 344; *Sperb* v. *Metropolitan El. Ry. Co.*, 137 N. Y. 155, 32 N. E. 1050, 20 L. R. A. 752. Cases exist where a water hydrant or tank or other structure placed by a railroad company on a public street has interfered with the right of ingress or egress to private property. It is stated by Judge GRAY in *Roman Catholic Church* v. *Railroad, supra,* that:

"It is not denied that the railroad of the defendant, as here complained of, was lawfully located, as author- ized by the legislature of New Jersey and for the public purposes stated in its charter. To fulfill these public purposes, it was authorized, among other things, to use steam for the propulsion of its engine and the movement of its trains. Steam, of course, cannot be created except by the combustion of fuel, and the combustion of fuel inevitably produces more or less smoke. These usual and normal results of the operation of a railroad, like the noises created by the movement of its trains, are necessarily contemplated and taken into account by the legislature that authorizes its construction. They enter into the common experience of modern life and are rec- ognized as necessary accompaniments of the convenience and advantages which railroad transportation brings to the public. Their sufferance is one of the penalties of living in a large community like a city. The annoyance and inconvenience occasioned thereby are to be viewed from the same legal standpoint as are the annoyance and inconvenience necessarily suffered by those who live along a turnpike or other highway. Some dust and noise arising from the traffic along such highways are the nec- essary and unavoidable incidents of the authorized and lawful use thereof. The same may be said of the noise of street cars. It is an undoubted annoyance to the peo- ple living along their route. To many people it is a se-

rious annoyance, often interfering with sleep and quiet home life. As said by Judge McPHERSON in the case of *Bunting* v. *Pennsylvania R. R., supra* [(C. C.) 189 Fed. 551], the perfectly proper use of these vehicles constitutes an annoyance, from which people suffer and sometimes seriously, but this inconvenience is an injury for which there is no redress.''

It is a matter of regret that appellant has experienced so much inconvenience from the operation of appellee's trains. It will be noted, however, that he purchased this property at a time when the railroad was in operation and after the railroad company had acquired its lawful right of way. Appellee is doing nothing more than making use of its right of way for the lawful and proper operation of its trains and to accomplish the purposes for which it was chartered and for which it condemned and paid for a right of way. We do not think the facts of this case establish the existence of a private nuisance. If they did, it would seem to follow that appellant would have the right to maintain a bill in equity to abate the nuisance. It was held in *Griveau* v. *So. Chicago City Ry. Co.,* 130 Ill. App. 519, that noise alone is insufficient to sustain an action for damages against a railroad company. To the same effect is the holding in *Aldrich* v. *W. Side El. Ry. Co.,* 195 Ill. 456, 63 N. E. 155, 57 L. R. A. 237. It was well said by Chief Justice SIMRALL, speaking for our court in *Green* v. *Lake,* 54 Miss. 540, 28 Am. Rep. 378:

''The complainants prefer to live in a city from motives which induce others to do the same thing in numbers sufficient to constitute a city. Such a community has its advantages and its inconveniences. Of the latter are dust, smoke, noise, and increased risk of conflagration. The elements which make up the city are its trade, commerce, and manufactures; incident to them are the noise of machinery, the presence of dust, and air less pure than in the country.''

*Affirmed.*