ROBERTSON *v.* NEW ORLEANS & G. N. R. Co.

(In Banc. June 9, 1930.)

[129 So. 100. No. 28484.]

Robertson & Campbell, of Jackson, for appellant.

26

28

Flowers, Brown & Hester and Green, Green & Potter, all of Jackson, for appellee.

Argued orally by **Marcellus Green**, for appellant, and by **Stokes V. Robertson**, for appellee.

**Griffith, J.**, delivered the opinion of the court.

Without pursuing the pleadings at length, we extract therefrom enough of the salient facts to disclose the grounds upon which our decision proceeds. Appellant, according to the allegations, is now and has been since the 2d day of April, 1924, the owner of the land upon which, shortly thereafter, a valuable residence was erected, at the corner of Monroe and Cherokee streets in the city of Jackson. The appellee railroad acquired on April 14, 1910, a right-of-way one hundred feet wide, the deed thereto containing provisions hereinafter to be mentioned. The said right-of-way is separated from appellant's property at one point only by the width of said Monroe street. Subsequent to the erection by appellant of his residence aforesaid, appellee has acquired considerable additional lands in the immediate vicinity, and to the damage and injury of appellant's said property, appellee has "erected and constructed and is now maintaining certain railroad tracks, including six private switch tracks, each about one mile in length, yards, railroad work shops, wye, terminals, a place for refueling, firing and watering, and a place for the switching, storing and cleaning of engines, coaches and cars." Some of the said private switch tracks are located in whole or in part on the said one hundred-foot right-of-way strip, which strip is now used also as a part of the main line of said railroad, but most of the things above mentioned are on the lands additionally acquired by the railroad adjacent to said one hundred-foot main line right-of-way. Ap-

pellant avers: "That he and his family, consisting of his wife and two children, are constantly annoyed and disturbed by noises of operating of locomotives and trains and rumbling of cars and the vibration produced thereby and of knocking and pounding of tools used by defendant's workmen in their said machine shops and railroad yards, and by the noises caused by the violent impact of car against car in switching cars and making up trains, and by noises of escaping steam from the boilers of engines permitted to stand at defendant's switch yard for long periods of time and especially at night; and plaintiff's said family are constantly disturbed, annoyed, damaged and injured by the soot, smoke and cinders from said defendant's engines and by trash and filth thrown around and near plaintiff's property by employees of said defendant, by trespassers on plaintiff's premises, by the parking of camp cars, and the placing, for long periods of time, of cars containing animals, fertilizer and other filth. That plaintiff's house is shaken and damaged by the vibrations caused by the operation of locomotives and cars in said switch yard, and plaintiff's said house and premises are thereby damaged, injured and rendered unattractive, unsafe, unsightly and unfit for residential property." There are averments that said structures and other things are permanent and are intended to be permanently maintained by appellee with the addition of further structures and appliances of a similar character, and there are specific allegations of damage in market value of appellant's said property and the amount thereof, for the recovery of which appellant sues.

The chief defense to this action, as we gather from the arguments, rests upon the fact that the private railroad facilities present in this case are essentially adjunct to the terminals, the location of which have been expressly authorized by an order of the Interstate Commerce Commission: that the said facilities and the alleged uses

thereof are therefore authorized and validated, under federal law, in supervention of all state law, protective or otherwise, which would operate by way of any sort of interference with the execution of said federal order. The only authorities cited to us in support of this broad proposition are those which affirm the universally recognized rule that, when within the limits of the federal constitutional power the federal authority, under federal legislation adequate to the purpose, has taken entire charge of any particular field open to such occupancy, then all state laws and state control cease within the occupied area, and so far as thus occupied. But we do not understand that the federal power has assumed full and complete jurisdiction as concerns the exact matter here in hand. A portion of the field has been occupied, it is true; but the Interstate Commerce Commission is primarily an inquisitorial and administrative body, possessing no large measure of real judicial authority. It assumes no final jurisdiction to award damages for the taking of private real property for public use, much less for the award of consequential damages in that regard. It has no conclusive jurisdiction of that particular subject-matter nor any adequate machinery, suitable to the adjudication, under due process, of that question; and if its order, made as aforesaid, could in this case be successfully used as an ægis, then it would equally authorize the going upon private property and the erection of those facilities thereon without the necessity of purchasing the same from the owners, or of condemning it under state law. If one of these propositions be admitted, then the other follows, and thence follows the answer that neither of them can be admitted. We think therefore that the point need not be further discussed.

Nor do we consider it any specific defense that the predecessors in title of appellant, who were the grantors of the main-line one hundred-foot right-of-way, inserted in their deed of conveyance to said strip of land the following covenants: "And we also hereby, for the con-

sideration aforesaid, acknowledge satisfaction for and release said railroad company its successors and assigns from all damages to us and to any and all our abutting property from the construction and operation of its railroad upon, over and across said land hereby conveyed, and over and across any of the streets of said city.'' Such a conveyance, so worded, confers no rights and contemplates no immunities that would not have equally existed under the statutory proceedings in eminent domain. 2 Lewis Eminent Domain, section 474 et seq. It covers the normal public operations of the railroad, as shall hereinafter be mentioned, and nothing more.

We come then to the main questions, which are: May appellant, on the facts alleged, recover as to any part of the damages claimed, or for any part of the acts alleged to have been done by appellee, and, if so, for what part and on what basis? The questions involved have been the subject of repeated adjudication in the courts both state and federal, and we think they have already been in substance decided in this court, particularly when our decisions are read in connection with the cases that are cited and approved in those opinions. It will not be necessary therefore to do more than refer to these cases and state our interpretation of them as applied to the case at bar. They are: King v. Railway & Light Co., 88 Miss. 456, 42 So. 204, 6 L. R. A. (N. S.) 1036, 117 Am. St. Rep. 749; Alabama & V. Ry. Co. v. King, 93 Miss. 379, 47 So. 857, 22 L. R. A. (N. S.) 603; Dean v. So. Ry. Co., 112 Miss. 334, 73 So. 55, 56, L. R. A. 1917C, 346; and Louisville & N. R. R. Co. v. Lellyett, 114 Tenn. 368, 85 S. W. 881, 1 L. R. A. (N. S.) 49, and the notes thereto, which case is relied on both in the King case and in the Dean case, supra.

A distinction is made and, as seen in the Dean case, has been recognized by this court, between that part of the functions of a railroad which are public and those which are private. A railroad serves both the public and

itself. As to all those functions which are exercised in the direct or immediate service of the public in the carrying of passengers and in the transportation and handling of freight, these are public, and, so long as exercised without negligence and in the customary manner with appropriate instrumentalities, are within the protection of the public franchise granted to that end. But all those permanent features of the service which appertain merely to the means of the supply of those instrumentalities, and in keeping them in order and making them available for said direct service, they belong to the private part, and, although incidental, are not things with which the public is directly concerned; they are things which the railroad manages for its own interest, Terrell v. C. & O. Ry. Co., 110 Va. 340, 66 S. E. 55, 32 L. R. A. (N. S.) 371; so that as to the latter, a railroad company stands in questions of private nuisances upon substantially the same plane as others who commit or maintain such nuisances. For further authorities, and particularly for those which, as we think, are in line with our own cases, see those collated at pages 723 to 728 and 731 to 736 of 6 A. L. R.

The result is that for the normal operations, however heavy this may be between station and station, or from station to a local shipping or loading point, or point of unloading, and whatever the number of tracks or trains, including all station or interstation switching, there is no liability for consequential damages. But, to quote the language of the Dean case, the railroad "cannot locate its machine shops, roundhouses, coal chutes, water tanks, or private switchyards" and those other permanent things which belong to its private concerns "near or adjacent to private property under such circumstances as to create a private nuisance and thereby depreciate or damage private property." The pleadings make in part, therefore, a case which falls within this rule, and the cause should not have been wholly dismissed.

It is said that the action of the trial court was based upon the cautious and salutary ground that only an abutting property owner can recover. It is said that the following cases support that view: Detroit v. C. H. Little Co., 146 Mich. 373, 109 N. W. 671, and Smith v. St. Paul, etc., Ry. Co., 39 Wash. 355, 81 P. 840, 70 L. R. A. 1018, 109 Am. St. Rep. 889. Without comment on the question whether these cases do in fact support that view, we say only that the action must stand, and under the weight of authority is made to stand, upon the basis of a private nuisance; and there is no warrant in that light for any arbitrary line confining a recovery strictly to abutting property As an illustration, we may suppose the case where a chemical plant is erected in a populous residential section, and the fumes from said plant destroy all ornamental trees, all shrubbery, flowers, and gardens, and are destructive also of health; relief would not in such case be confined to abutting owners. Moreover, it is sufficient to say that the proposition that only abutting owners are entitled to recover is expressly negatived by the highest court in a leading case on the exact subject we are here considering. See Richards v. Washington Terminal Co., 233 U. S. 546, 34 S. Ct. 654, 58 L. Ed. 1088, L. R. A. 1915A, 887.

But the considerations just mentioned do present a difficulty that has caused us to hold this case for an unusual length of time and for prolonged conferences. We are informed by the pleadings that the property of appellant is situated ''in an exclusive residential section of said city.'' We are thereby forewarned that any unguarded allowances of claims for damages because of depreciation of property may bring upon this public service corporation a flood of suits demanding all sorts of compensation for all sorts of damages fancied rather than legally real, and that by our refusal to confine the claimants to abutting owners, claimants might assume to come from remote locations so long as within sight or hearing of the said private yards and installations of the

railroad company. We have also been mindful of the fact that a large part of the uses to which the tracks on the main line right-of-way are being put are nonactionable, while at the same time these same tracks are being used in part in the service of the private part of appellee's work, and that thus great difficulty will arise in the measurement of damages in separating the actionable from the nonactionable, and we have been mindful, too, that it is not enough that a technical right of action may exist, unless at the same time it be practical and politic in the interest of sound government to permit the action to prevail. We have not failed to note the reluctance evident in many of the opinions of several of the courts on this very subject, and the recognition given therein of the difficulties just suggested. We have therefore thought to work out and to express in this opinion some limited rule for the measurement and estimation of damages in this case. We have considered the rule as expressed in Robbins v. Scranton, 217 Pa. 577, 66 A. 977, that the damages allowed shall be only such as have been the proximate and immediate result of the said private actions of said railroad company and the injuries to be included, only those that are proximate, immediate, and substantial, not those that belong to matters of taste, the æsthetic senses, or mere considerations, of personal preference, but only where the injury is actual, real, tangible, and substantial to the extent of being a physical invasion or the material equivalent thereof.

But we are unable properly to proceed to an exact or definite pronouncement on this subject in view of the state of this record and the course of the argument. The questions presented and the arguments made have relation to the issues of liability and are not addressed to the measure of damages. We must therefore remit the definite consideration of, and the more precise decision on, this issue to the learned trial judge, to be by him first determined; for the parties, to say nothing of ourselves, are entitled to the judgment of the court of original juris-

diction on this as on other questions, before we shall enter upon final statement here.

Reversed and remanded.

**Anderson, J.,** specially concurred.

I have grave doubts as to the soundness of the decision in this case, and still I am unable to combat, to my entire satisfaction, the reasoning of the opinion. I therefore yield my doubts and concur in the decision. In doing so, however, I feel that it might answer a good purpose to set down the principal reasons for my doubts. There are three outstanding facts to be kept in mind in the consideration of this case, namely:

(a) Appellee's terminal yards, storage and switch tracks thereon, as well as its main line and all of its operations in and upon its yards and main line, are legal, so far as the general public is concerned, and if the appellant is damaged, it is on the ground that such operations constitute a private nuisance, and not on the ground that they are negligently carried on.

(b) Appellant's land, on which his residence is situated, abuts neither the one hundred-foot right-of-way on which appellee's main line and certain switch tracks are located, nor on its yards, appellant's property being separated from the one hundred-foot right-of-way by Monroe and Cherokee streets, and from the yards, which are several hundred feet away, by the one hundred-foot right-of-way and lands owned by others than either appellee or appellant.

(c) The appellant is bound by the covenants in Colonel Harding's conveyance of the one hundred-foot right-of-way to the appellee, by the terms of which the appellee was released from all damages to any and all abutting property owned by the grantor because of the construction and operation by the appellee of its railroad over and across the 100-foot right of way.

Where a railroad company acquires lands, either by purchase or condemnation, for the operation of its business of a common carrier of passengers and freight, it often happens that land, no part of which is so acquired by the company, is depreciated in value by its proximity. The lawful operation of a railroad necessarily involves the ringing of bells, the blowing of whistles, the rumbling of trains, the emission of smoke, fumes, and odors, casting cinders on adjoining property, and the vibration of buildings, all of which not only constitutes annoyance and discomfort, to occupants of homes, as well as business houses in the neighborhood of the railroad, but may actually depreciate their market value. The question is whether such a depreciation in value is "damage" in the constitutional sense. Can it be said that the test of a common-law nuisance is available for such a condition? It is not the practice, and never was, at least to any marked degree, for a landowner to construct a private railroad on his land without legislative authority, and, for that reason, there are no cases holding that the operation of such a railroad would or would not give rise to an action at common law in favor of an adjoining landowner. Where a railroad is laid out by public authority, would such damages be special and peculiar and actionable at common law? Lands half a mile away suffer the same kind of damages, though in a less degree, as lands in close proximity to the railroad. "It is accordingly held by a majority of the decided cases that when a railroad is constructed, under legislative authority, on its own right-of-way, an owner of land, *no part of which is taken, cannot recover damages caused by the lawful and prudent operation of the railroad* even when the statutes or constitution of the state provide for recovery when land is damaged." (Italics ours.) 10 R. C. L., p. 170, section 149. The following cases appear to sustain that principle: Austin v. Ry. Co., 108 Ga. 671, 34 S. E. 852, 47 L. R. A. 755; Aldrich v. R. R. Co., 195 Ill. 456, 63 N. E. 155, 57 L. R. A. 237; Pennsylvania R. R. Co. v. Lip-

pincott, 116 Pa. 472, 9 A. 871, 2 Am. St. Rep. 618; Pennsylvania R. R. Co. v. Marchant, 119 Pa. 541, 13 A. 690, 4 Am. St. Rep. 659; Pennsylvania Co. v. R. R. Co., 151 Pa. 334, 25 A. 107, 31 Am. St. Rep. 762; Hyde v. Minn. Ry. Co., 29 S. D. 220, 136 N. W. 92, 40 L. R. A. (N. S.) 48 and note; Twenty-Second Corp. of Church of Jesus Christ of Latter-Day Saints v. R. R. Co., 36 Utah 238, 103 P. 243, 23 L. R. A. (N. S.) 860, 140 Am. St. Rep. 819; Smith v. R. R. Co., 39 Wash. 355, 81 P. 840, 70 L. R. A. 1018, 109 Am. St. Rep. 889 and note.

On the other hand, while it is generally agreed there is no liability for mere noise and odors arising from the operation of railroads, it is held by the supreme court of the United States, and in Nebraska, Texas, and Virginia, that property so near a railroad as to be injured by the operation of its trains by having the smoke, soot, and cinders cast on it, suffers a special and peculiar injury which is the basis of the constitutional right to compensation. 10 R. C. L., section 149, pp. 170 and 171, where the two lines of cases will be found in the notes.

The following decisions hold that nonabutting landowners have no right of recovery against a railroad company for its nonnegligent operations: Detroit v. Little Co., 146 Mich. 373, 109 N. W. 671; Murphy v. Chicago, etc., R. R. Co., 66 Wash. 663, 120 P. 525; Clute v. North Yakima, etc., R. R. Co., 62 Wash. 531, 114 P. 513; O'Connell v. Seattle, 62 Wash. 218, 113 P. 762; Smith v. St. Paul R. R. Co., 39 Wash. 355, 81 P. 840, 70 L. R. A. 1018, 109 Am. St. Rep. 889, all collected in 20 C. J., p. 677. The following decisions, also found in 20 C. J., p. 677, hold to the contrary: Trowbridge v. Brookline, 144 Mass. 139, 10 N. E. 796; Robbins v. Scranton, 217 Pa. 577, 66 A. 977; In re Chatham St., 191 Pa. 604, 43 A. 365; Cooper v. Scranton City, 21 Pa. Super. Ct. 17.

The trouble in my mind may be illustrated as thus: A railroad company has acquired by condemnation lands for a right-of-way for its through line operation. In like manner, it has acquired land for terminal facilities, in-

cluding storage and switch tracks, and facilities for the interchange of traffic with other railroads. In the condemnation proceedings, all such persons having an interest in the lands condemned provided for in our Code chapter on Eminent Domain (Hemingway's Code 1927, sections 1560-1588) have been made parties. Damages have been awarded not only for the lands actually taken, but for injury to other lands not taken. The railroad has been constructed and is in operation. Its operations are legal in every respect. If a nonabutting landowner is still entitled to damages for the depreciation in value of his property caused by odors, smoke, soot, and the jarring caused by movement of the cars over the tracks, the railroad, under some conditions, would not have gotten very far with its condemnation proceedings. It would seem that, to be on safe ground, it would have to condemn all nonabutting lands that would be so damaged, regardless of their distance from the lands actually taken.

In Dean v. Railway Co., 112 Miss. 333, 73 So. 55, L. R. A. 1917C, 346, the court said that it might be conceded that a railroad company was not protected by its charter in creating a private nuisance; that it could not locate its machine shops, roundhouses, coal chutes, water tanks, or switchyards near or adjacent to private property under such circumstances as to create a private nuisance and thereby depreciate the value of such private property; that in the construction of such conveniences the railroad company had the power of selection, and that such constructions were classed as private works of the public corporation, and that the railroad company had no greater rights in that respect than an individual or private corporation. The record in the present case fails to show that the appellee had the power of selection of the place for its works but does show that the Interstate Commerce Commission, acting under authority of the Commerce Clause of the Federal Constitution (article 1, section 8, cl. 3), and Transportation Act (41 Stat. 456)

passed in pursuance thereof, granted appellee a certificate of necessity and convenience authorizing the location of such works exactly where they are. Whether the appellee initiated the proceeding before the Interstate Commerce Commission is not shown, nor does the record in this case show whether, if the works had been located elsewhere, such location would have met the requirements of the appellee as well as of the public.